IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMIE ARNOLD and CLINTON** | ) | |
| **FEGER Individually and on behalf** | ) | |
| **of all others similarly situated,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No: 4:10-CV-00352-AGF |
| | ) | |
| vs. | ) | |
| | ) | |
| **DIRECTV, INC. d/b/a DIRECTV** | ) | |
| **HOME SERVICES and DTV HOME** | ) | |
| **SERVICES II, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Kimberly A. Yates, #102099
Patricia J. Martin, #518160
LITTLER MENDELSON, P.C.
Two CityPlace Drive
Suite 200
St. Louis, MO  63141
Telephone: 314.432.4797
Facsimile: 314.432.4796
kyates@littler.com
pmartin@littler.com

Counsel for Defendants

Plaintiffs, two former satellite installation and repair technicians, seek to bring a hybrid opt-in/opt-out class to recover purported unpaid wages under the Fair Labor Standards Act ("FLSA") and the Missouri Minimum Wage Law ("MMWL") on their own behalf and on behalf of all others similarly situated.  Plaintiffs' First Amended Complaint ("Complaint") is full of boilerplate legal conclusions but wholly lacks the factual support required after *Iqbal* and *Twombly* to state a claim on their own behalf, let alone on behalf of a collection of thousands of technicians across the country who installed DIRECTV systems, some of whom worked for DIRECTV[1] and some of whom worked for subcontractors.

The shortcomings of Plaintiffs' Complaint are significant and fatal.  The  Complaint does not identify the locations where the named Plaintiffs or the proposed class were purportedly employed.  Plaintiffs even failed to bring suit against all of the entities they allege "jointly" employed them.  The Complaint also lacks any factual allegations concerning the hours Plaintiffs claim they worked, their total compensation, their per task rates of pay or the amounts of the charge backs they allege they suffered.  The facts that are alleged in the Complaint are not sufficient to show a violation of law occurred.  For instance, the Complaint alleges that Defendants had a policy of paying technicians on a per task basis and that not all tasks were compensable.  But these facts, even if proven, do not amount to a violation of the FLSA or MMWL.  The facts alleged by Plaintiffs are insufficient to support their claims that they were jointly employed by DIRECTV or that DIRECTV violated the FLSA or MMWL by failing to pay overtime or by paying an effective rate lower than the applicable minimum wage. Accordingly, their claims should be dismissed as a matter of law.

---

[1]  Throughout this brief, DIRECTV, Inc. and DTV Home Services II, LLC are collectively referred to as "DIRECTV."  "DIRECTV" does not refer to the various entities Plaintiffs have defined as "Defendants" in their Complaint.  *See* First Amended Complaint ¶ 9.

Despite their failure to plead facts sufficient to state a claim on their own behalf, Plaintiffs also seek to bring an opt-in national collective action on behalf of all technicians employed directly or indirectly by DIRECTV under the FLSA and an opt-out Missouri state law class action.  Plaintiffs' class allegations fail because they have not identified any policy that violates either the FLSA or MMWL.  Moreover, Plaintiffs' conclusory allegations of the elements of a class and collective actions are insufficient to survive a motion to dismiss following *Iqbal* and *Twombly*.

Further, Plaintiffs' attempt to bring a national collective action on behalf of technicians who were purportedly jointly employed by DIRECTV raises serious fairness concerns since the direct employers of these technicians are not parties to this suit and there are already numerous collective actions involving these technicians currently pending across the country.

This Court should also dismiss the Rule 23 class allegations for two additional, independent reasons.  First, MMWL claims may not be pursued on a class basis because the MMWL has been amended to incorporate the FLSA and FLSA claims may not proceed under Rule 23.  Second, this Court should decline to exercise supplemental jurisdiction over the MMWL claims of individuals who do not affirmatively join this lawsuit for several reasons. Opt-in/opt-out claims are inherently incompatible.  Allowing Plaintiffs to pursue state law claims under the "opt-out" class action provisions of Rule 23 would frustrate the statutory "opt-in" scheme Congress created for addressing FLSA claims.  Finally, an opt-out Rule 23 class would cause the state law claims to predominate over the federal claims.  Consequently, Defendants respectfully submit that this Court should only exercise supplemental jurisdiction over the MMWL claims of the named Plaintiffs and any other individuals who affirmatively join this action.

BACKGROUND

Plaintiffs, two former satellite installation and repair technicians, have brought a cause of action under the FLSA and MMWL on behalf of themselves and all others similarly situated. Plaintiffs assert they were "jointly" employed by "Defendants."  First Amended Complaint  ¶ 23. Plaintiffs define "Defendants" to include DIRECTV, Inc., DTV Home Services II, LLC, UP Communications Services, LLC, AeroSat USA, LLC, and Premier Communications.  *Id.* at ¶  9. Plaintiffs' principal job was to install and repair DIRECTV satellite television service.  *Id.* at ¶ 13.[2]

The crux of Plaintiffs' Complaint is that they were paid on a "per task basis" and not properly compensated for all hours worked.  *Id.* at ¶ 2.  Plaintiffs allege that they were not compensated for certain tasks that were "integral and indispensable" to installing and repairing DIRECTV satellite television service.   *Id.* at ¶ 17-18.  Plaintiffs allege that they were subject to an effective wage rate of less than the applicable minimum wage and that they were not paid a premium for overtime.  *Id.* at ¶  20-22.  Plaintiffs seek to bring their FLSA claim on behalf of a class of "All persons working as technicians for Defendants from March 2, 2007 through the present."  *Id.* at ¶ 27.  Plaintiffs seek to bring their MMWL claim as a class action under Rule 23 on behalf of a class of "All persons working as technicians for Defendants in the State of Missouri from March 2, 2008 through the present."  *Id.* at ¶ 30.

Plaintiffs' Complaint wholly lacks allegations concerning the location Plaintiffs worked, which of the five entities Plaintiffs describe as "Defendants" directly employed them, hired and

---

[2] By way of background, DIRECTV provides its satellite television services to over twenty-five million customers in the United States through technicians and installers. To provide these services, DIRECTV employs some individuals, and it also contracts with independent entities known as Home Service Providers ("HSPs").  All of DIRECTV's HSPs directly employ technicians or engage independent contractors to install DIRECTV systems, and some also utilize subcontractors who either directly employ their own technicians or engage independent contractors to perform under their contracts.  As relevant here, Premier Communications, AeroSat USA, and Live Wire Communications were HSPs that operated in Missouri.

fired them, set the conditions of their employment, made decisions with respect to their compensation and rates of pay, or kept their employment records. The Complaint also lacks allegations with respect to the number of hours Plaintiffs purportedly worked, the total compensation they received, the amount they were paid on a per task basis, or any other facts which could show that Plaintiffs were not properly paid overtime or were paid an effective wage below the applicable minimum wage. The Complaint further wholly lacks any factual allegations with respect to the other technicians on behalf of whom Plaintiffs wish to prosecute this claim. As discussed below, the allegations in the Complaint are insufficient to survive a motion to dismiss following the United States Supreme Court's decisions in *Iqbal* and *Twombly*.

## ARGUMENT

### A.  LEGAL STANDARD FOR A MOTION TO DISMISS.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has explained, the purpose of the Rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). While Federal Rule of Civil Procedure 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. Hence, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*, *quoting*, *Twombly*, 550 U.S. at 555. Nor will a complaint that tenders merely "'naked assertion[s]' devoid of 'further factual enhancement.'" *Twombly,* 550 U.S. at 557; *Iqbal,* 129 S.Ct. at 1949.

Under this standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)).  As a result, even a complaint that pleads facts that are consistent with a defendant's liability is insufficient. *Id*.  Rather, the facts in the complaint must allow the court to reach a reasonable inference that the defendant is liable. *Id*.

In determining whether a complaint meets this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.  Thus, as stated by the Supreme Court last year:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 1950.  Only a complaint that states a plausible claim for relief based on these standards can survive a motion to dismiss. *Id*.  Further, courts should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950. This is particularly true where, as here, Plaintiffs want to unlock the doors of discovery on behalf of a purported nationwide class of thousands of employees, with all the time and expense that will entail, without first meeting their obligation to set forth the minimum pleading requirements

5

necessary to maintain an individual action on behalf of themselves, much less an action in which they are representatives of a large class of technicians.

**B.      Plaintiffs' Allegations Are Legally Insufficient and Should be Dismissed.**

      **i.      Plaintiffs Have Not Pled A Joint Employment Relationship with Defendants.**

Plaintiffs have not pled facts in their Complaint that would entitle them to recover against the Defendants under either the FLSA or the MMWL, because they have not, and cannot, properly plead the existence of an employment relationship with either DIRECTV, Inc. or DTV Home Services II, LLC.  Here, Plaintiffs allege that they were employed by "Defendants" whom they define to include DIRECTV, Inc., DTV Home Services II, LLC, Up Communications Services, LLC, AeroSat USA, LLC and Premier Communications.  *See* First Amended Complaint ¶ 9-11.[3]  Plaintiffs' Complaint wholly fails to specify which particular entity employed them and instead alleges that "Defendants" are "joint employers" of Plaintiffs and other similarly situated technicians under the FLSA and MMWL.  *Id.* at ¶ 23.  Plaintiffs' conclusory allegation that the Defendants were joint employers of Plaintiffs is insufficient to survive a motion to dismiss following *Iqbal* and *Twombly*.  *See Loyd v. Ace Logistics, LLC,* 2008 U.S. Dist. LEXIS 100633 (W.D. Mo. Dec. 12, 2008).[4]

Both the FLSA and the MMWL define "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d) and

---

[3]  In their Complaint, Plaintiffs allege that DTV Home Services II, LLC is the "successor-in-liability to Up Communications Services, LLC, AeroSat USA, LLC and Premier Communications."  *See* First Amended Complaint ¶ 9.  DTV Home Services II, LLC is not a successor-in-liability to Premier Communications.  Plaintiffs' allegation that it is a successor-in-liability is a legal conclusion, and following *Iqbal* and *Twombly*, legal conclusions are not entitled to a presumption of truth on a motion to dismiss.  Plaintiffs have not, and cannot, plead any facts supporting the legal conclusion that DTV Home Services II, LLC is the successor-in-liability to Premier Communications.

[4]  Within the period of time Plaintiffs allege they worked as technicians for "Defendants," Plaintiffs actually worked for three different DIRECTV HSPs: Premier Communications, AeroSat USA, and Live Wire Communications.  Plaintiffs have failed to join Premier or Live Wire as Defendants in this action.  The entity that operated as AeroSat USA was acquired by DTV Home Services II, LLC in 2009.  However Plaintiffs have not, and cannot, plead facts supporting their legal conclusion that either DIRECTV, Inc. or DTV Home Services II, LLC was Plaintiffs' "joint employer" with these non-joined HSPs.

MO. REV. STAT. § 290.500(4). In determining whether an individual or entity is an employer, courts analyze the "economic reality" of the relationship between the parties. *McDonald v. Jp Mktg. Assocs., LLC,* 2007 U.S. Dist. LEXIS 27747 (D. Minn. Apr. 13, 2007). *See also Loyd*, 2008 U.S. Dist. LEXIS 100633 at *9.[5]  Although the Eighth Circuit has not yet set out a test for determining whether an entity may be held to be a joint employer under the FLSA, district courts within the Eighth Circuit look at four factors.  In particular, courts look at "whether the alleged employer: (1)  had the power to hire and fire plaintiff; (2) supervised and controlled plaintiff's work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained plaintiff's employment records." *Loyd*, 2008 U.S. Dist. LEXIS 100633 at *10-11 (citing numerous cases).

Here, Plaintiffs' Complaint fails to allege **which** entity had the power to hire or fire them, supervised or controlled their work schedules, set the conditions of their employment, determined the rate or method of pay, or maintained their employment records.  Plaintiffs make general allegations about being assigned work by Defendants and through Defendants' dispatching system, but fail to specify **which** Defendant assigned the work.  The Complaint lacks **any** allegations about who hired or fired Plaintiffs, who maintained their employment records, and who determined their rate and method of pay.

The U.S. District Court for the Western District of Missouri's opinion in *Loyd* is directly on point.  In *Loyd* the Court held that a broad conclusory allegation that the plaintiff was the employee of multiple defendants was insufficient to satisfy the pleading standard set forth in *Twombly*.  The Court held that following *Twombly*, a plaintiff seeking to recover under the FLSA based on a joint employment relationship was required to plead the specific circumstances of her

---

[5] The overtime provision of the MMWL specifically provides that it is to be interpreted in accordance with the FLSA.  *See* MO. REV. STAT. § 290.505.4.

employment, including who hired and fired her, who supervised her, who controlled her work schedule, who maintained her employment records and who set her rate of pay.  *Id.* at *9-13. Because Plaintiffs fail to plead any facts supporting their conclusory allegation that each of the five entities (DIRECTV, Inc., DTV Home Services II, LLC, Up Communications, AeroSat USA, LLC, and Premier Communications) employed Plaintiffs as joint employers, their claims should be dismissed under *Twombly* and *Iqbal*.

ii.     **Plaintiffs Have Not Pled Facts Supporting a Claim They Were Paid Less than the Minimum Wage and Not Paid Overtime.**

In addition to their failure to plead facts supporting their conclusion that Defendants are joint employers, Plaintiffs' Complaint does not include facts supporting their legal conclusion that Plaintiffs were not paid the appropriate minimum wage and overtime.   The crux of Plaintiffs' allegations are that they were paid on a per task basis and that some necessary tasks were not compensable.  First Amended Complaint ¶ 17-18.  They also allege they were subject to "charge backs" when customers complained.  *Id.* at ¶ 19.  Plaintiffs allege that although they routinely worked more than 40 hours per week, they were not paid overtime premiums.  *Id.* at ¶ 20-21.   In addition, they allege they were subjected to an effective wage rate of less than the applicable minimum wage.  *Id.* at ¶ 22. Wholly absent from the Complaint are any allegations supporting an inference that Defendants' purported policy of paying on a piece rate basis violated the FLSA or MMWL, or allegations of the specific hours worked by Plaintiffs, the compensation paid, the effective hourly rate paid to Plaintiffs, the rates of pay, or the amounts and dates of the charge backs to which they allege they were subjected.  The sparse factual allegations in the Complaint are insufficient to survive a motion to dismiss.

As an initial matter, the FLSA specifically allows employers to compensate employees on a piece rate basis.  29 C.F.R. 778.111.  Accordingly, Plaintiffs' allegations that they were paid

on a per task basis and some tasks were not compensable, are insufficient to show that Plaintiffs are entitled to relief under either the FLSA or the MMWL.

Further, to survive a motion to dismiss a minimum wage claim, Plaintiffs must allege facts showing that they are entitled to relief, such as the number of hours worked per week, the compensation paid, and the deductions taken or expenses incurred.  *See Bailey v. Border Foods, Inc.*, 2009 U.S. Dist. LEXIS 93378  (D. Minn. Oct. 6, 2009) (dismissing an FLSA claim in which plaintiffs alleged their unreimbursed expenses brought them below the minimum wage and stating, "Plaintiffs have failed to identify their hourly pay rates, the amount of their per-delivery reimbursements, the amounts generally expended in delivering pizzas, or any facts that would permit the Court to infer that Plaintiffs actually received less than the minimum wage.") *See also Jones v. Casey's General Stores*, 538 F. Supp. 2d 1094, 1103 (S.D. Iowa 2008) (minimum wage claim for off the clock hours worked was not plausible on its face where plaintiff failed to allege facts, such as the actual hours worked and compensation paid, showing that plaintiff's effective wage rate was below the minimum wage).

Allegations that Plaintiffs regularly worked more than 40 hours per week and were not paid overtime, or that Plaintiffs' effective rate of pay was less than the minimum wage are likewise insufficient.  *See Zhong v. August August Corp.*, 498 F.Supp. 625, 628-29 (S.D.N.Y. 2007) (dismissing complaint for failure to state a claim where complaint alleged that plaintiff worked more than 40 hours per week and was not paid an overtime premium and stating, "a claim under the FLSA to recover unpaid minimum or overtime wages should indicate the applicable rate of pay and the amount of unpaid minimum or overtime wages due"); *Acosta v. Yale Club*, 1995 U.S. Dist. LEXIS 14881 (S.D.N.Y. Oct. 12, 1995) (dismissing overtime claim under the FLSA and stating, "Simply stating that Plaintiffs were not paid for overtime work does

not sufficiently allege a violation of Section 7 of the FLSA.  Plaintiff must specifically plead which waiters were denied proper overtime pay for each week they worked over forty hours.").

Here Plaintiffs' Complaint wholly fails to specify the number of hours worked per week, the compensation paid by week, and the amount of any charge backs purportedly taken.  Such factual allegations are required to show that Plaintiffs are entitled to relief.  Accordingly, Plaintiffs have not stated a claim for relief under either the FLSA or the MMWL.

### iii.    Plaintiffs' Collective and Class Allegations Are Insufficient.

Plaintiffs attempt, based on nothing other than boilerplate recitation of the elements of a collective and class action, to expand this case beyond the named Plaintiffs.  Plaintiffs seek to certify an opt-in FLSA collective action consisting of "All persons working as technicians for Defendants from March 2, 2007 through the present." *See* First Amended Complaint ¶ 27.  They also seek certification of a class under Rule 23 consisting of "All persons working as technicians for Defendants in the State of Missouri from March 2, 2008 through the present."  *Id.* at ¶ 30.  As the United States Supreme Court admonished in *Twombly*:

> A district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.  [T]he costs of modern federal [wage and hour] litigation and the increasing caseload of the federal courts counsel against sending parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.

*Twombly,* 550 U.S. at 558 (internal quotation marks and citation omitted). As set forth below, the Complaint is devoid of any specificity that states plausible grounds for a collective action under the FLSA or a class action under Rule 23.

### a.    The FLSA Allegations

Under the FLSA, a plaintiff may bring a collective action on behalf of himself and other employees who are "similarly situated."  29 U.S.C. § 216(b).   A plaintiff has the burden of

demonstrating that he is similarly situated to members of his proposed collective action. *Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996). The FLSA does not define the term "similarly situated." However, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that **violated the law**." *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007) (emphasis added).

Plaintiffs' Complaint however, contains no factual allegations of an illegal common policy or plan to which Plaintiffs and others were subjected. Indeed, the only policy alluded to is the allegation that Plaintiffs were paid on a per task basis and some tasks were not compensable. As discussed above, payment on a per task or piece rate basis does not violate the FLSA or the MMWL, even if not all "tasks" are compensable. Absent a published corporate policy not to pay employees in compliance with the FLSA, plaintiffs must "establish a colorable basis that a policy-to-violate-the-policy exists." *Dado v. Speedway SuperAmerica LLC*, 2009 U.S. Dist. LEXIS 3816 (D. Minn. Jan. 20, 2009). Plaintiffs' allegations fail to show that Plaintiffs were subject to a policy that violated wage and hour laws, or that Defendants had a policy to violate their policy of complying with applicable wage and hour laws.

Further, Plaintiffs' Complaint wholly lacks any factual allegations supporting a claim that they are similarly situated to other employees of DIRECTV. Plaintiffs are purporting to bring a nationwide collective action on behalf of any technician who worked for Defendants over a more than three year period of time. Because Plaintiffs' claims are based on an allegation of a joint employer relationship between DIRECTV and HSPs Premier Communications, AeroSat USA, and Live Wire Communications, presumably Plaintiffs are seeking to include technicians employed by other DIRECTV HSPs within their claim. Plaintiffs' Complaint is devoid of any

allegation that Plaintiffs have knowledge or information about what happens at DIRECTV's various locations, let alone at the locations of DIRECTV's various HSPs.  Plaintiffs have failed to allege what office they worked at; whether they have knowledge or information of the job duties that other purportedly similarly situated employees performed; whether they have knowledge or information regarding the hours that other technicians worked; whether they have knowledge or information of pay practices at other DIRECTV locations or at the locations of DIRECTV HSPs, and whether they have knowledge or information of DIRECTV policies that violated the law or a policy to violate a policy that was in compliance with the law.  Moreover, DIRECTV has several categories of technicians, some of whom are paid hourly and some of whom are paid on a piece rate basis. Plaintiffs apparently seek to include all categories of technicians within their class. Plaintiffs have simply pled no facts supporting a conclusion that Plaintiffs are similarly situated to other DIRECTV technicians, let alone to technicians employed by other HSPs across the country. In sum, Plaintiffs' collective action allegations are premised on sheer speculation and nothing more.  It would be entirely inconsistent with the Supreme Court's holding in *Twombly* to open the doors of class discovery based on boilerplate collective action allegations that are utterly bereft of supporting facts.

### b.    The MMWL Allegations

As with their FLSA collective action allegations, Plaintiffs' Rule 23 class allegations consist of nothing more than boilerplate recitation of the elements necessary to establish a Rule 23 class.  *See* First Amended Complaint ¶ 31-38.  Following *Iqbal* and *Twombly,* these boilerplate elements and legal conclusions may not be considered in determining whether to dismiss the claim.  "A case is not maintainable as a class action by virtue of its designation as such in the pleadings."  *In re Prempro*, 230 F.R.D. 555, 575 (E.D. Ark. 2005) (citation omitted).

Instead, to proceed as a Rule 23 class action, Plaintiffs must meet the requirements of Rule 23(a). In particular, Plaintiff must show: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class: (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.  *See* FED. R. CIV. P. 23(a).   In addition to these prerequisites, Plaintiffs must also satisfy one of the requirements set forth in Rule 23(b).  *In re Genetically Modified Rice Litigation,*  251 F.R.D. 392, 396 (E.D. Mo. 2008).   Here, Plaintiffs have failed to plead facts to support their legal conclusions with respect to these elements.

Plaintiffs' own Complaint demonstrates that they cannot establish the numerosity element.  The numerosity element of Rule 23(a) is satisfied where a plaintiff alleges facts "showing that it would be extremely difficult or inconvenient to join all members of the class." *Morgan v. United Parcel Service of America, Inc.,* 169 F.R.D. 349, 355 (E.D. Mo. 1996).  In the present case, with respect to the purported collective action Plaintiffs seek to pursue on a nationwide basis, Plaintiffs admit that "potential class members may be easily and quickly be notified of the pendency of this action."  First Amended Complaint, ¶ 29.  Given that Plaintiffs state that the members of a nationwide class could be quickly and easily notified, they cannot maintain that it would be "extremely difficult or inconvenient" to join only those technicians employed in Missouri.

Further, Plaintiffs have not, and cannot, plead facts supporting their legal conclusion that their claims are typical of the claims of other members of their purported class.  As discussed above, Plaintiffs' Complaint wholly fails to identify the location where they worked or to specify which of DIRECTV's HSPs directly employed them.  Moreover, Plaintiffs' purported class

contains technicians who worked for various HSPs (either directly or indirectly) at different locations in Missouri and they offer no facts indicating that they have knowledge of the claims of these other technicians or even that other technicians were subjected to similar pay practices. Accordingly, Plaintiffs' class action allegations should be dismissed.

### iv.    Plaintiffs' Claims Cannot Be Saved by Limited or Cabined Discovery.

The Federal Rules of Civil Procedure's pleading requirements may not be relaxed based upon the possibility that discovery might provide a plaintiff with the specific factual predicate necessary to provide some substantiation to bare allegations.  Indeed, the Supreme Court has unequivocally rejected the use of limited or cabined discovery to save an otherwise deficient complaint.  As the Supreme Court stated in *Iqbal*, "Rule 8 marks a notable and generous departure from the hyper-technical code pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than legal conclusions."  *Iqbal*, 129 S.Ct. at 1950.  If a plaintiff's complaint is deficient under Rule 8, a plaintiff "is not entitled to discovery, cabined or otherwise."  *Id.* at 1954. Indeed, the Supreme Court has held that "[i]t is no answer to say that a claim just shy of a plausible entitlement to relieve can, if groundless, be weeded out early in the discovery process through careful case management . . . " *Twombly,* 550 U.S. at 559.  Plaintiffs' Complaint cannot be saved because discovery *might* permit them later to amend the complaint to meet the requirements of Rule 8.  The threadbare allegations contained in the Complaint should not subject this Court or DIRECTV to the unnecessary and expensive cost of a hybrid class/collective action.

### C.    Fairness and Procedural Concerns Support Dismissal of the Collective Action Allegations.

Plaintiffs' attempt to bring a nationwide collective action on behalf of all technicians who were purportedly jointly employed by DIRECTV over the past three years raises serious fairness

concerns.   In analyzing the appropriateness of a collective action, courts consider whether fairness and procedural concerns support certification.  *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D. N.J. 1987). Because the fairness and procedural concerns with respect to a nationwide collection of technicians employed by different entities is glaringly obvious, Defendants respectfully submit that this Court should consider these concerns and dismiss this claim now – "at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 127 S.Ct. at 1966 (internal citations and quotations omitted).

As discussed above, DIRECTV employs some technicians, including some technicians in Missouri.  However, DIRECTV also contracts with numerous HSPs across the country and in Missouri.   These HSPs, in turn, have subcontractor relationships with other entities and individuals.   Plaintiffs are attempting to bring a nationwide collective action on behalf of technicians employed by these various HSPs and on behalf of technicians employed by subcontractors of DIRECTV's HSPs.  Other cases are currently pending in which members of Plaintiffs' purported collection are seeking recovery of allegedly unpaid wages.[6]  The existence of those lawsuits presents both fairness and procedure concerns that support dismissal of the collection as currently proposed.

Plaintiffs are asking this Court to rule on the employment relationship between DIRECTV and the workers of HSPs and their subcontractors around the country, even though

---

[6] A few of these cases include the following: *Cicero v. DIRECTV, Inc.,* No. 07-1182 (C.D. Cal) (proposed class action for thousands of installers in California since 2006); *Lang v. DIRECTV, Inc., et al.,* No. 10-1085 (E.D. La.) (proposed nationwide collective action of all technicians, installers, and field trainers who worked for DIRECT or any of its HSPs); *Stephan, et al. v. Michigan Microtech, Inc.,* et al., No. 2008-12136, (E.D. Mich.) (proposed collection of all current and former technicians employed by DIRECTV's Michigan HSP and paid on a per job basis after August 10, 2005); *Davis v. JBM, Inc., et al.,* No. 2008-00642, (S.D. Ohio) (proposed collection of all current and former technicians employed by a DIRECTV HSP in Illinois and paid on a per job basis after August 10, 2005); *Laichev, et al. v. JBM, Inc.,* No. 2007-00802, (S.D. Ohio) (collection of all technicians who have worked for a DIRECTV HSP in Ohio from to the present); and *Waterman v. Multiband Corporation, et al.,* No. 2009-02541, (W.D. Tenn.) (proposed collection of all current and former non-exempt employees at Atoka, Tennessee location employed by DIRECTV HSP in Tennessee and two of its subcontractors during last three years). In addition, there are several other actions pending around the country in which a technician sued only his HSP and, in some of those cases, DIRECTV would not even know of the case's existence.

those other entities are not parties to this lawsuit.  Such a ruling would present grave collateral estoppel and due process concerns given that the contractual relationships between those entities can be expected to include indemnity provisions and other shifting of liabilities.[7]  It also threatens the pendency of the series of other actions around the country (to some of which DIRECTV is a party, and to others it is not) in which individual technicians are suing their direct employers, the HSPs, to recover allegedly unpaid wages.  In sum, the goals of the collective action procedure espoused by the FLSA cannot be served through such a large collection as proposed by Plaintiffs.

As to the procedural problems, the most fundamental concern is that all relevant parties are not part of this proceeding.  The Plaintiffs seek to represent every technician in the United States that worked on DIRECTV systems, but they have not named each of those technicians' direct employers.  Indeed, they have not even named the named Plaintiffs' direct employers, omitting Premier Communications and Live Wire Communications as defendants in this action.  As a result, if the collection were to proceed with notice, the Court and parties would be left to solicit contact information for the vast majority of the collection from entities that are not named in the suit or even subject to the Court's jurisdiction.  In addition, the marshalling of the information gathered from thousands of workers that will have worked for dozens of HSPs around the country will present a tremendous burden on the parties and the Court – one that the FLSA was not intended to create with its collective action mechanism.  Accordingly, Plaintiffs' collective action claims should be dismissed.

---

[7] Indeed, the named and unnamed plaintiffs may also have indemnity obligations if they held themselves out as independent contractors.

### D.    MMWL Claims Cannot Be Prosecuted as Rule 23 Class Actions.

DIRECTV respectfully submits that MMWL claims may not proceed as Rule 23 class actions.  This is because the MMWL does not expressly authorize class actions and instead incorporates the FLSA, which does not allow class actions.

The remedy provision of the MMWL does not provide for recovery by class action.  *See* MO. REV. STAT. 290.527.  Instead, it provides only an "employee" may bring any legal action necessary to collect the claim. *Id.*  The statute makes no provision for an employee to bring claims on behalf of other aggrieved employees.  Other Missouri statutes, in contrast, expressly authorize class actions.  *See* MO. REV. STAT. § 407.025 (expressly authorizing class actions for violations of the Missouri Merchandising Practices Act, stating, "[p]ersons entitled to bring an action pursuant to subsection 1 of this section may, if the unlawful method, act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class against one or more defendants as representatives of a class.").

The omission from the MMWL of language authorizing class actions is made more significant by the fact that the Missouri Legislature expressly amended the overtime provision of the MMWL to provide that it "shall be interpreted in accordance with the Fair Labor Standards Act, 29 U.S.C. Section 201, *et seq.*, as amended, and the Portal to Portal Act, 29 U.S.C. Section 251, *et seq.*, as amended, and any regulations promulgated thereunder."  MO. REV. STAT. § 290.505.4.  FLSA claims cannot be prosecuted as Rule 23 class actions. *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *See also Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975).  Accordingly, the MMWL, like the FLSA, should be interpreted to allow only for opt-in collective actions.

**E.      This Court Should Decline to Exercise Supplemental Jurisdiction Over the State Law Claims of Individuals Who Do Not Affirmatively Join this Lawsuit.**

Even if this Court determines that MMWL claims may proceed as Rule 23 class actions, Defendants respectfully submit that this Court should decline to exercise supplemental jurisdiction over the state law claims of individuals who do not affirmatively join this lawsuit. Plaintiffs elected to bring this case in federal court and this court has jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).   Jurisdiction over Plaintiffs' state law claim is based on 28 U.S.C. § 1367 (supplemental jurisdiction).   First Amended Complaint ¶ 5.

A district court is empowered to exercise primary original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States,"  28 U.S.C. § 1331, and likewise, to exercise supplemental jurisdiction over pendent state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Thus, a district court may adjudicate pendent state law claims only to the extent that they derive from or are attendant to federal claims pursued simultaneously by a plaintiff.  Conversely, a district court may decline to exercise supplemental pendent jurisdiction when state law claims substantially predominate over federal claims or where compelling reasons exist to justify declining jurisdiction.  *See* 28 U.S.C. § 1367(c)(2) and (4). *See also Bartleson v. Winnebago Industries, Inc.,* 219 F.R.D. 629, 635 (N.D. Ia. 2003) (declining to exercise supplemental jurisdiction over state law wage and hour claim of individuals who did not file consents to join lawsuit).

Here, there are several compelling reasons for this Court to decline jurisdiction over the state law class allegations. First, Rule 23 opt-out claims and Section 216(b) opt-in claims are inherently incompatible.  In addition to creating confusion, allowing these claims to proceed

together frustrates the statutory "opt-in" scheme Congress created for addressing FLSA claims. Further, if the MMWL claim proceeds as an opt-out class, that claim will predominate over the federal claim.

> **i.    Rule 23 Opt-Out Claims and Section 216(b) Opt-In Collective Actions are Inherently Incompatible.**

As the Eighth Circuit has acknowledged, there is a "fundamental, irreconcilable difference" between Rule 23 class actions and Section 216(b) collective actions. *McKenna v. Champion International Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984). The Eighth Circuit has not yet directly decided whether Rule 23 state wage and hour claims can proceed alongside Section 216(b) FLSA collective actions. Defendants respectfully submit that the better reasoned authority holds that Rule 23 class actions cannot proceed alongside Section 216(b) collective actions. *See Harden v. WIS Holding Corp.*, 2007 U.S. Dist. LEXIS 97608 (W.D. Mo. June 27, 2007) (granting motion to dismiss state law Rule 23 claim).

Section 216(b) limits the scope of class actions for overtime pay under the FLSA by requiring putative class members to consent in writing (*i.e.*, "opt-in") to join the action:

> An action . . . may be maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing*** to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added). Here, Plaintiffs seek to pursue parallel state law claims simultaneously as a class action pursuant to Rule 23, under which class members must affirmatively request exclusion from the class (*i.e.*, "opt-out") in order to avoid the binding effect of a class judgment. *See* Fed. R. Civ. P. 23(c).

This "opt-out" rule for class actions under Rule 23 is inherently incompatible with the "opt-in" rule for collective actions under the FLSA. *Cameron-Grant v. Maxim Healthcare*

*Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003) (describing the "fundamental, irreconcilable difference" between Section 216(b) and Rule 23), *cert. denied*, 541 U.S. 1030 (2004); *King v. General Elec. Co.*, 960 F.2d 617, 621 (7th Cir. 1992) (Section 216(b) "preempts" Rule 23; *Fuller Brush Co.*, 527 F.2d at 536 (discussing "irreconcilability" of Section 216(b) and Rule 23); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (Section 216(b) and Rule 23 are "mutually exclusive and irreconcilable").

To allow Plaintiffs to pursue state-law wage claims as an opt-out class action under Rule 23 "would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement." *Otto v. Pocono Health System*, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006). *See also Harden,* 2007 U.S. Dist. LEXIS 97608 at *4; *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) (*stating*, "We find that allowing [plaintiff] to use supplemental state-law claims to certify an opt-out class in federal court would undermine Congress's intent to limit these types of claims to collective actions. [Plaintiff] cannot circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar in substance to the FLSA that lack the opt-in requirement.").

When it was originally enacted in 1938, the FLSA did not contain a written consent requirement.  An employee could bring an action on behalf of other similarly situated employees without their written consent.  Fair Labor Standards Act of 1938, Pub. L. No. 75-718, § 16(b), 52 Stat. 1060, 1069.  In 1947, Congress added the written consent requirement as a limitation on an employee's ability to sue on behalf of others.  Portal-to-Portal Act of 1947, Pub. L. No. 80-49, §§ 5(a), 7, 61 Stat. 84, 87-88 (assigning the title "Representative Actions Banned" to the relevant statutory provision).  The written consent requirement was for the purpose of "limiting private

FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffman-La Roche Inc.*, 493 U.S. at 173.

In *Aquilino v. Home Depot U.S.A., Inc.*, the court explained Congress's rationale for adopting the FLSA's "opt-in" requirement:

> Congress sought to reign in the great influx of cases by securing workers' rights while more specifically defining and limiting federal jurisdiction. 92 Cong. Rec. 2087 (1947). . . . [T]he legislative fix was to allow one employee to sue on behalf of other "similarly situated" employees so long as the employee "gives his consent in writing." . . . The purpose of the written consent to opt-in was to prevent suits instituted by persons who have "no direct stake in the outcome" while ***preserving the right of an "absentee" employee from being bound by a collective resolution***. 93 Cong. Rec. S2182 (1947).

*Aquilino v. Home Depot U.S.A., Inc.*, 2006 U.S. Dist. LEXIS 48554, *3-5 (D.N.J. July 17, 2006) (emphasis added).

"It is clear that Congress labored to create an opt-in scheme when it created Section 216(b) specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge." *Otto*, 457 F. Supp. 2d at 524; *see also Cameron-Grant*, 347 F.3d at 1248 (Congress's purpose in adding the "opt-in" requirement was to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit). Thus, as the Seventh Circuit Court of Appeals has recognized, "the 1947 amendments to the FLSA prohibit what precisely is advanced under Rule 23 – a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members." *Cameron-Grant*, 347 F.3d at 1248.

If Plaintiffs are allowed to prosecute a Rule 23 class action alongside their Section 216(b) collective action, absentee employees will be bound by the collective resolution. This outcome

is directly contrary to Congress' intent in adopting Section 216(b).  Given the factual and legal similarities between Plaintiffs' FLSA and state law claims, which they plead as if they were interchangeable, an adjudication of Plaintiffs' state law claims on behalf of a Rule 23 class would have preclusive effect on the parallel FLSA claims of every member of the Rule 23 class, including those who do not consent to join the FLSA collective action.  *See Kuncl v. IBM*, 660 F. Supp. 2d 1246 (N.D. Ok. 2009) (holding that plaintiff's FLSA and Oklahoma state claims were barred by the doctrine of *res judicata* because plaintiff failed to opt-out of a hybrid state law/FLSA action that was settled in California, even though plaintiff did not opt-in to the FLSA claim).

Accordingly, any current or former employee of DIRECTV or its HSPs similarly situated to Plaintiffs who does nothing in response to a Court notice about this action (*i.e.*, does not opt-in to the FLSA collective claim or opt-out of the state class claim) would have the right to assert his or her own FLSA claim abridged by the factual findings, legal conclusions and judgment entered with respect to Plaintiffs' state law claims.  The fundamental right of such individuals to have their FLSA rights adjudicated only upon their written consent would thus be extinguished.  As one district court explained in support of its decision not to exercise supplemental jurisdiction over a state law claim brought in connection with an FLSA § 216(b) claim:

> Allowing plaintiffs to proceed with a state-law class action here would confound Congress' design for the collective action and inject unacceptable complexities into the management of the case. [An individual] with notice of her right to opt in to the FLSA claim and to opt out of the state class action might reasonably decide not to respond to the notice – but then she would be a party in the class action and not a party in the collective action. *A judgment in the class action might operate to preclude her from pursuing an FLSA claim on her own, a result plainly at odds with Congress's intent to allow workers to preserve FLSA claims by declining to opt in*.

*Chase v. Aimco Props., L.P.*, 374 F. Supp. 2d 196, 202 (D.D.C. 2005) (emphasis added).

Accordingly, the incompatability of these causes of actions is a compelling reason for the Court to decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4) over the claims of individuals who do not affirmatively join this lawsuit. *Hyman v. WM Financial Servs., Inc.*, 2007 U.S. Dist. LEXIS 41433, *18-19 (D.N.J. June 7, 2007) (declining to exercise supplemental jurisdiction over a Rule 23 class action claim for failure to pay overtime for work performed in excess of forty hours per week, where the claim mimics the FLSA, because to do so would circumvent the FLSA's opt-in requirement); *Chase*, 374 F. Supp. 2d at 201 (same). Plaintiffs' Rule 23 class allegations should, therefore, be dismissed.[8]

ii.      **The Missouri Class Claims Would Predominate.**

This Court should also decline to exercise supplemental jurisdiction over the state law claims of individuals who do not affirmatively join this lawsuit for the independent reason that if the MMWL claims are allowed to proceed as a class action, they would predominate over the FLSA collective action claims. "Predomination under section 1367 generally goes to the type of claim, not the number of parties involved. But the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog." *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003).

---

[8] Further, Plaintiffs cannot show that a Rule 23 class is "superior to other available methods for the fair and efficient adjudication of the controversy" *In re Genetically Modified Rice Litigation*, 251 F.R.D. at 396 (*citing* Fed. R. Civ. P. 23(b)(3)) as required to maintain a Rule 23 opt-out class because: (1) Rule 23 class actions and Section 216(b) collective actions are inherently incompatible and (2) allowing the state law claims to proceed as a class action would extinguish the fundamental right of employees to have their FLSA rights adjudicated only upon their written consent as a result of the *res judicata* implications discussed above. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004) ("[m]aintaining the suit exclusively as a FLSA conditional class action is superior to certifying an additional state law class under Rule 23(b)(3)"); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 578 (N.D. Ill. 2004) ("certifying a class for McClain's state-law claims is not the superior manner in which to proceed under Rule 23(b)" because to hold otherwise "would undermine Congress's directive that FLSA collective actions are limited to those parties who opt in to the action"); *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 991 (C.D.Cal. 2006) (*citing Leuthold* and declaring that "certifying a Rule 23 class action is not the superior means of adjudicating Plaintiff's claims").

The number of individuals who participate in the Section 216(b) collective action and the Rule 23 class action will result in the state class claims predominating over the section 216(b) claims.  Although some of the putative plaintiffs may participate in both actions, it is uncertain whether those who choose not to opt-out of the Rule 23 state law class action will opt-in to the Section 216(b) FLSA collective action.  Because a significant number of putative Rule 23 class action members may not opt-in to the Section 216(b) FLSA collective action, the predominance of state law claims would be magnified.  *See De Asencio*, 342 F.3d at 310 (concluding that "[u]nder most circumstances, the opt-out class will be greater in number, perhaps even exponentially greater" and that "[t]he aggregation of claims, particularly as class actions, profoundly affects the substantive rights of the parties to the litigation")*; Roe-Midgett v. CC Servs., Inc.*, 2006 U.S. Dist. LEXIS 96978 (S.D. Ill. Mar. 16, 2006) (finding that the Illinois state law claims clearly predominate over the FLSA claims because of the greater number of opt-out plaintiffs who would be seeking relief under state law, as opposed to the opt-in plaintiffs pursuing FLSA remedies); *Harden*, 2007 U.S. Dist. LEXIS 97608 (declining to exercise jurisdiction over state law claim and granting motion to dismiss because state law claim would predominate over the federal claim.).

Accordingly, DIRECTV respectfully submits that this Court should only exercise supplemental jurisdiction over the named Plaintiffs' MMWL claims and dismiss the Rule 23 class allegations. *Bartleson,* 219 F.R.D. at 635 (declining to exercise supplemental jurisdiction over state law wage and hour claim of individuals who did not file consents to join lawsuit).

## CONCLUSION

Plaintiffs' Complaint should be dismissed because both their individual and collective and class allegations are not plausible on their face.  Further, Plaintiffs' proposed nationwide

FLSA collective action presents grave fairness concerns given that the direct employers of many purported members of the collection are not parties and numerous other collective actions involving these direct employers are already pending.   Plaintiffs' MMWL class allegations should also be dismissed because MMWL claims cannot be prosecuted as Rule 23 classes and because this Court should decline to exercise supplemental jurisdiction over the state law class claims since opt-in/opt-out claims are inherently incompatible and a state law class would predominate over the federal claim.   Accordingly, DIRECTV respectfully requests that this Court dismiss the First Amended Complaint in its entirety and grant such further relief as this court deems proper and just.

Respectfully submitted,

/s/ Patricia J. Martin
Kimberly A. Yates, #102099
Patricia J. Martin, #518160
LITTLER MENDELSON, P.C.
Two CityPlace Drive
Suite 200
St. Louis, MO  63141
Telephone: 314.432.4797
Facsimile: 314.432.4796
kyates@littler.com
pmartin@littler.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of May, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: Bradford B. Lear and Todd C. Wertz, Lear Wertz LLP, 2003 West Broadway, Columbia, Missouri 65203, and George A. Hanson, Stueve Siegel Hanson LLP, 460 Nichols Road, Suite 200, Kansas City, MO 64112, Attorneys for Plaintiff.

/s/ Patricia J. Martin

Firmwide:95478483.6 044840.1083