UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMIE ARNOLD and CLINTON FEGER, )
individually and on behalf of all others )
similarly situated, )
)
　　　　Plaintiffs, )
)
v. ) Case No. 4:10-CV-352-JAR
)
DIRECTV, INC., d/b/a/ DIRECTV HOME )
SERVICES and DTV HOME SERVICES II, )
LLC, )
)
　　　　Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Conditional Collective Action Certification [ECF No. 70]. Oral argument was held on the Motion on June 1, 2012. Pursuant to the Court's Order of June 4, 2012, Plaintiffs submitted a supplemental brief to clarify the scope of their proposed class in light of Lang, et al. v. DirecTV, Inc., 2:10-CV-1085 (E.D. La.) [ECF No. 119] and Defendants filed their response thereto [ECF No. 120]. This matter is, therefore, fully briefed and ready for disposition. For the following reasons, the motion will be granted.

### Background

This is an action for unpaid wages and overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. §§ 290.500-530. Plaintiffs worked as satellite installation and repair technicians for Defendants DirecTV, Inc. d/b/a DirecTV Home Services, and DTV Home Services II, LLC

("DirecTV"), and their three "predecessors-in-liability."[1] Count I is brought as an "opt-in" collective action under the FLSA, § 216(b), on behalf of Plaintiffs and "all persons working as technicians for Defendants from March 2, 2007 through the present." (Plaintiffs' First Amended Complaint ("FAC"), Doc. No. 13, ¶ 27). Count II is brought under the MMWL as a Federal Rule of Civil Procedure 23 class action on behalf of Plaintiffs and "all persons working as technicians for Defendants in the State of Missouri from March 2, 2008 through the present." (Id., ¶ 30).

Plaintiffs allege they were paid on a per-task basis and were not compensated for all hours worked. (Id., ¶ 17). They allege that in addition to performing certain tasks designated by Defendants as compensable, Plaintiffs performed other tasks, such as attending meetings, completing paperwork, maintaining work vehicles, stocking vehicles with inventory and supplies, and traveling to and from job sites, which were integral and necessary to their principal responsibilities, but for which they were not paid. (Id., ¶ 18).

Plaintiffs further allege they were subject to "charge backs," pursuant to which their pay would be withheld for certain jobs if a customer complained. (Id., ¶ 19). Plaintiffs claim they "routinely worked more than forty hours per week for Defendants," "were not paid a premium for work done beyond forty hours in a given workweek," and "were routinely subjected to working at an effective wage rate of less than the applicable minimum wage." (Id., ¶¶ 20 - 22). Plaintiffs also allege they were required to wear "DirecTV" uniforms obtained from a "DirecTV" website, and display "DirecTV" logo magnets and window stickers on their vehicles. (Id., ¶ 16).

In their motion, Plaintiffs request the Court conditionally certify a collective action and authorize notice to the following class:

---

[1] DirecTV's predecessors-in-liability are: Up Communications Services, LLC; AeroSat USA, LLC; and Premier Communications.

> Persons who (1) are currently working or previously worked as an Installation or Service Technician for DirecTV, Inc., DirecTV Home Services, a DirecTV Home Service Provider, or through one of their subcontractors, for any period of time after July 22, 2008; (2) exclusively installed and/or serviced DirecTV equipment; (3) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; and (4) worked more than 40 hours in a week.

Plaintiffs further request the Court order Defendants to provide Plaintiffs with an electronically readable list of the names, last known addresses, fax numbers, email addresses, and social security numbers of all persons who are currently working or have previously worked as an Installation or Service Technician for DirecTV, Inc., DirecTV Home Services, a DirecTV Home Service Provider (HSP), or through one of their subcontractors, for any period of time after July 22, 2008. Plaintiffs request the Court order Defendants to provide this information to Plaintiffs within ten days and direct the issuance of Plaintiffs' proposed notice to all such persons on an expedited schedule.

Defendants oppose certification on the grounds that: (1) DirecTV is not a joint employer of Plaintiffs; (2) Plaintiffs have not demonstrated that they and the putative class members were "victims of a single decision, policy or plan" that violated the FLSA; (3) Plaintiffs have not presented evidence that other similarly situated individuals desire to opt-in to this case; and (4) Plaintiffs' proposed class is not manageable given the scope of the class they are seeking to certify.

**Legal Standard**

Section 7 of the FLSA mandates that an employer may not subject non-exempt employees to a work week in excess of forty hours, unless the employee is compensated for his or her overtime with additional pay of at least one and one-half times his or her regular hourly wage. 29 U.S.C. § 207. A collective action under the FLSA to recover overtime compensation and liquidated damages may be maintained, "by any one or more employees for and in behalf of

- 3 -

himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an "opt-in" basis, requiring employees to provide their consent in writing to join the action. Id.; Ford v. Townsends of Arkansas, Inc., No. 4:08cv509, 2010 WL 1433455, at *8 (E.D. Ark. Apr. 9, 2010).

The FLSA does not define the term "similarly situated." Kautsch v. Premier Communications, 504 F.Supp.2d 685, 689 (W.D. Mo. 2007). Moreover, the Eighth Circuit has not yet decided the standard for determining whether employees are "similarly situated." District courts in this circuit, however, consistently apply a two-step analysis to the question of conditional certification. See, e.g., Kennedy v. Boulevard Bank, 2012 WL 3637766, at *2 (E.D. Mo. August 22, 2012); Ondes v. Monsanto Co., 2011 WL 6152858, at *2 (E.D. Mo. Dec. 12, 2011); Perrin v. Papa John's Intern., Inc., 2011 WL 4089251, at *2 (E.D. Mo. Sept. 14, 2011); Beasely v. GC Servs. LP, 270 F.R.D. 442, 444 (E.D. Mo. 2010); and Littlefield v. Dealer Warranty Servs., LLC, 679 F.Supp.2d 1014, 1016 (E.D. Mo.2010).

Under this two-step process, the plaintiff first moves for class certification at an early stage in the litigation. Kautsch, 504 F.Supp.2d at 688. A plaintiff's burden when seeking conditional certification is not onerous and the merits of a plaintiff's claims are not considered. Id. Plaintiffs can meet this burden by making a modest factual showing, based upon the pleadings and affidavits, that the proposed class were victims of a single decision, policy, or plan. Ondes, 2011 WL 6152858, at *3 (citations omitted). The plaintiff "need not show that members of the conditionally certified class are actually similarly situated." Dernovish v. AT&T Operations, Inc., 2010 WL 143692, at *1 (W.D. Mo. Jan. 12, 2010) (internal quotations and citation omitted). The Court will not make any credibility determinations or findings of fact with respect to contradictory evidence presented by the parties at this initial stage. Perrin, 2011 WL 4089251, *3

(citing Luiken v. Domino's Pizza, LLC, 2010 WL 2545875, at *2 (D. Minn. June 21, 2010)). "Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to opt-in." Id. (internal quotations and citation omitted).

The second step of the process occurs when the defendant moves to decertify the class. Ford, 2010 WL 1433455, at *3; Beasley, 270 F.R.D. at 444; Dernovish, 2010 WL 143692, at *1. This typically is done after the close of discovery, when the Court has much more information and is able to make a more informed decision. "If the claims are not similarly situated, the Court decertifies the class and the opt-in plaintiffs are dismissed without prejudice." Garner v. Regis Corp., No. 03-5037, 2004 WL 5455905, at *2 (W.D. Mo. Aug. 5, 2004) (citation omitted). It is under this general framework that the Court analyzes Plaintiffs' motion to conditionally certify the class.

**Discussion**

To support their claim that they and other satellite installation and repair technicians are similarly situated, Plaintiffs provide sworn declarations stating they were paid on a piece-rate basis and were not compensated for all hours worked. Plaintiffs state they routinely worked more than forty hours per week and were not paid any overtime premium. (Declaration of Jamie Arnold ("Arnold"), ECF No. 70-5, ¶3; Declaration of Clinton Feger ("Feger"), ECF No. 70-5, ¶3); Declaration of William Bleeker ("Bleeker"), ECF No. 70-7, ¶ 6). Arnold worked for Premier, AeroSat and LiveWire, and spent an average of 55-65 hours per week performing tasks associated with his job (Arnold, ¶¶ 2, 3). Feger worked for Premier and AeroSat, and spent an average of 60-70 hours per week performing tasks associated with his job (Feger, ¶¶2, 3). Bleeker states that during his first tenure with United Service Providers, Inc. ("USPI") and FNL

Group, LLC ("FNL")[2], Bleeker was scheduled to work five or six days a week and spent an average of 50-60 hours per week performing tasks associated with his job (Bleeker, ¶ 6). During his second tenure at FNL, Bleeker worked a four-day per week schedule and spent approximately 48-55 hours per week performing tasks associated with his job. (Bleeker, ¶ 7). Both Arnold and Feger were generally scheduled to work six, and sometimes seven, days a week. (Arnold, ¶3; Feger, ¶ 3).

Plaintiffs attest that in addition to performing certain tasks designated by DirecTV as compensable, they performed other necessary work-related tasks for which they were not paid, such as attending weekly meetings, completing paperwork, telephoning customers, maintaining work vehicles, stocking vehicles with inventory and supplies, and traveling to and from job sites (Arnold, ¶¶ 5, 8, 9, 11, 13, 18, 20; Feger, ¶¶ 5, 8, 9, 11, 13, 18, 20; Bleeker, ¶¶ 8, 9, 12, 13, 15, 22, 24). Plaintiffs further attest that if a job they performed did not fully pass quality control inspections, they were subject to "charge backs" for some or all of the piece-rate pay they would have received from completing the work order activity at issue. (Arnold, ¶ 15; Feger, ¶ 15; Bleeker, ¶ 19) Plaintiffs state they never signed or received any policy explaining what time was compensated for under the piece-rate system. They were told that their driving time was not paid and that they were only paid for completed work orders. (Arnold, ¶ 20; Feger, ¶ 20; Bleeker, ¶ 24) They were not paid for "go-backs," returning to a customer's home to complete a work order, assist another technician, or repair something improperly done by another technician. (Arnold, ¶ 14; Feger, ¶ 14; Bleeker, ¶¶ 18, 22). All three Plaintiffs attest that these practices and policies were the same whether working for Premier, AeroStat, Live Wire, Ironwood, DirecTV Home

---

[2]It was Bleeker's understanding that USPI performed work under the HSPs Ironwood and AeroSat, and that FNL performed work under AeroSat (Bleeker, ¶ 5).

Services, USPI or FNL. (Arnold, ¶ 21; Feger, ¶ 21; Bleeker, ¶ 25). Based on these allegations, Plaintiffs assert they have substantiated that technicians are paid on a piece-rate basis that does not compensate for all necessary tasks, and that there is no agreement or understanding regarding how piece-rate pay compensates them for non-productive time. Davis, 408 F.Supp.2d at 816.

Upon consideration and as discussed herein, the Court finds Plaintiffs have met their burden for purposes of conditional class certification and notice at this initial stage of the proceedings. The certification standard at this initial stage is low. Plaintiffs have submitted three declarations from technicians at five different HSPs asserting the same piece rate policy. Each plaintiff has asserted he was not paid for all hours worked as a result of this policy. Considering Plaintiffs' minimal burden at this point, the Court finds this evidence is sufficient to establish a colorable basis for Plaintiffs' claims. Ondes, 2011 WL 6152858, at *3 (citing Kautsch, 504 F.Supp.2d at 690). At this initial stage, conditional certification is appropriate. DirecTV's arguments are not entirely without merit; however, they are properly raised in a motion to decertify filed after the close of discovery, or at least where "discovery is largely complete and the matter is ready for trial." Huang v. Gateway Hotel Holdings, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citing Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1028, 1218 (11th Cir. 2001).

**DirecTV as Joint Employer**

Under the FLSA, two or more employers may employ a person jointly, and each joint employer is individually responsible for complying with the FLSA with respect to the entire employment. 29 C.F.R. § 791.2(a). The Eighth Circuit has not established a test to determine whether an entity may be held to be a joint employer under the FLSA; however, several courts in this Circuit have been guided by the following four factors: (1) the power to hire and fire employees: (2) supervision and control of employee work schedules or conditions of

- 7 -

employment; (3) determination of the rate and method of payment; and (4) maintenance of employment records. Arnold v. DirecTV, Inc., 2011 WL 839636, at *6 (E.D. Mo. March 7, 2011) (citing Schubert v. Bethesda Health Group, Inc., 319 F.Supp.2d 963, 971 (E.D. Mo. 2004)). No one factor is dispositive; courts examine the "economic realities" of the working relationship rather than technical definitions relating to employment. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961).

Based on these factors, DirecTV argues conditional class certification is improper because it is not the joint employer of Plaintiffs. (Defendants' Memorandum in Opposition to Plaintiffs' Motion for Conditional Certification ("Response"), Doc. No. 75, p. 19). DirecTV states it has no authority to fire HSP technicians, and that its role in hiring is limited to a requirement that HSPs have their technicians pass a drug test and background check. (Response, pp. 20-21). In addition, DirecTV states Plaintiffs cannot establish it had sufficient supervision and control over their work schedules or conditions of employment. (Id., pp.22-23). There is also no evidence DirecTV had any control over what HSPs paid their technicians or that DirecTV maintained employment records relating to Plaintiffs. (Id., p.24). Finally, DirecTV argues that because hundreds of different subcontractors and work sites are involved, the proof required to resolve the joint employer issue, involving numerous individual determinations, cannot be applied to the class a whole. (Memorandum in Opposition, Doc. No. 75, pp. 25-26).

The Court finds Plaintiffs have alleged sufficient facts to sustain their modest burden for conditional certification on this issue. Unlike in Jacobson v. Comcast, 740 F.Supp.2d 683 (D. Md. 2010), where the court found evidence of quality control and customer service supervision insufficient to establish joint employment under the FLSA, Plaintiffs have alleged that DirecTV controls both scheduling and day-to-day management of all technicians. Plaintiffs point to

evidence of DirecTV's control through Siebel, its scheduling/management system, and its HSP agreements, which restrict hiring, control work assignments, require specific training, enforce quality controls and govern personnel records. (Plaintiffs' Reply in Support of their Motion for Conditional Collective Action Certification ("Reply"), Doc. No. 78, pp. 8-12). In addition, DirecTV's HSP rate matrix was set geographically, rather than by company and was, therefore, the same for all HSPs working in a particular area. (Id., pp. 15-16). The fact that threshold employment questions exist does not keep the Court from considering the propriety of conditionally certifying the collective action. See Lang, 2011 WL 6934607, at *3 (citing Fernandes da Silva v. M2/Royal Const. of Louisiana, LLC, 2009 WL 3565949, at *3 (E.D. La. October 29, 2009); Nobles v. State Farm Mut. Auto. Ins. Co., 2011 WL 3794021, at *11-12 (W.D. Mo. August 25, 2011)). "Although courts have later decertified actions because of employment relationship questions, this does not alter the present burden at the conditional certification stage considered here." Id. (citing Mooney v. Aramco Services Co., 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds by* Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)). Furthermore, DirecTV's arguments regarding the individualized inquiries required are inappropriate at this stage of the proceedings and can be raised before the Court at the second, or decertification, stage. Sharpe v. APAC Customer Services, Inc., 2010 WL 135168, at *7 (W.D. Wis. Jan. 11, 2010).

### Common Policy or Plan

Next, DirecTV argues the Court should deny conditional class certification because Plaintiffs have no evidence that their putative class members were paid pursuant to a common

policy or subjected to a single decision, policy or practice.[3] (Response, pp. 26, 32). Specifically, DirecTV contends that piece rate technicians were paid for all time worked, both "productive" and "nonproductive," in compliance with the FLSA. 29 C.F.R.§ 778.318(c)[4]. (Id., pp. 28-30). To

---

[3]While DirecTV asserts that Plaintiffs have no evidence of policies and procedures of HSPs other than AeroSat, the Court notes that DirecTV's discovery production was limited to documents related to AeroSat, provided DirecTV certify whether its relationship with the other HSPs in question differed, during the relevant time period, from its relationship with AeroSat, as reflected in the documents produced. [ECF No. 63].

[4] 29 C.F.R. § 778.318 provides as follows:

(a) Failure to pay for nonproductive time worked. Some agreements provide for payment only for the hours spent in productive work; the work hours spent in waiting time, time spent in travel on the employer's behalf or similar nonproductive time are not made compensable and in some cases are neither counted nor compensated. Payment pursuant to such an agreement will not comply with the Act; such nonproductive working hours must be counted and paid for.

. . .

(c) Compensation attributable to both productive and nonproductive hours. The situation described in paragraph (a) of this section is to be distinguished from one in which such nonproductive hours are properly counted as working time but no special hourly rate is assigned to such hours because it is understood by the parties that the other compensation received by the employee is intended to cover pay for such hours. For example, while it is not proper for an employer to agree with his pieceworkers that the hours spent in down-time (waiting for work) will not be paid for or will be neither paid for nor counted, it is permissible for the parties to agree that the pay the employees will earn at piece rates is intended to compensate them for all hours worked, the productive as well as the nonproductive hours. If this is the agreement of the parties, the regular rate of the pieceworker will be the rate determined by dividing the total piecework earnings by the total hours worked (both productive and nonproductive) in the workweek. Extra compensation (one-half the rate as so determined) would, of course, be due for each hour worked in excess of the applicable maximum hours standard.

the extent Plaintiffs claim they did not have this understanding, DirecTV states the Court would necessarily have to engage in an individualized inquiry of each technician's understanding with respect to AeroSat's pay practices. (Id. at 31.) Again, arguments concerning the individualized inquiries required as well as the merits of Plaintiffs' claims are inappropriate at this stage of the proceedings and can be raised before the Court at the second, or decertification, stage." Dominquez v. Minn. Beef Indus., 2007 WL 2422837, at *3 (D.Minn. Aug. 21, 2007) (internal quotation omitted).

DirecTV further argues Plaintiffs have no evidence that class members were subject to a single policy or practice not to record all hours worked. (Response, pp. 32-34). The parties have presented conflicting evidence as to whether technicians were specifically instructed to accurately record all hours worked. (See e.g., Arnold and Feger, ¶ 19; Bleeker, ¶ 23; J.Sellers Depo. 68:7-69:7; 72:25-73:20; 148:15-149:5, Doc. No. 75-4). The Court will not make any credibility determinations or findings of fact with respect to contradictory evidence presented by the parties at this initial stage. Ondes, 2011 WL 6152858, at *6. Again, this argument relates to the merits and should not be resolved at this juncture. Id.

Finally, with respect to Plaintiffs' claim that they were subject to impermissible "charge backs," DirecTV argues that while its HSP Agreements impose charge backs on HSPs for certain items, it does not dictate whether the HSPs pass on those charge backs to its subcontractors or employees. (Response, p. at 35.) As discussed above, while this may affect Plaintiffs' ability to prove liability, the Court does not reach the merits of the parties' claims and defenses at the certification stage. See e.g., Ondes, 2011 WL 6152858, at *6; Robertson v. LTS Management Services, LLC, 642 F.Supp. 2d 922, 925 (W.D. Mo. 2008). In sum, Plaintiffs have alleged

sufficient facts to support their claim that DirecTV has a policy of nonpayment for compensable time.

### Existence of Others Similarly Situated

DirecTV argues the Court should deny conditional class certification because Plaintiffs have produced no evidence that "other similarly situated individuals desire to opt-in to this case." Knutson v. Blue Cross and Blue Shield of Minnesota, 2008 WL 4371382, at * 3-4 (D. Minn. Sept. 23, 2008). (Response, pp. 35-36). Here, Plaintiffs have only one opt-in,[5] which DirecTV contends is insufficient to warrant conditional certification. Id.

The Court does not require evidence that potential class members desire to opt-in at the first stage of certification. Ondes, 2011 WL 6152858, at * 5 (citing Kautsch, 504 F. Supp. 2d at 690 n.1). The Court agrees that such a rule " 'would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs.' " Id. (quoting Helmert v. Butterball, LLC, 2009 WL 5066759, at *5 (E.D. Ark. Dec. 15, 2009). "Furthermore, requiring named plaintiffs to contact potential class members to survey their interest in opting in to the litigation before sending the class members official notice of the litigation would unnecessarily give rise to potential ethical issues." Id.

Accordingly, at this stage of the litigation, the Court will allow conditional class certification based on Plaintiffs' declarations and without specific evidence of other individuals interested in joining the class.

---

[5]Plaintiff Bill Bleecker filed a consent to join this action on May 25, 2012. (Doc. No. 21).

- 12 -

**Manageability**

DirecTV further argues the proposed class submitted by Plaintiffs is not manageable, particularly in light of the principles set out in Wal-mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011)[6]. First, DirecTV argues that because Plaintiffs have not excluded individuals who are subject to an arbitration agreement from their proposed class, the Court will have to determine whether each opt-in is in fact subject to an arbitration agreement before proceeding. (Response, p. 37). Second, in light of the numerous other lawsuits pending against DirecTV, its HSPs and/or their subcontractors, including technicians within Plaintiffs' proposed class, DirecTV contends it is unreasonable for Plaintiffs to pursue their broad class and expect the Court to manage this duplicity. (Response, p. 37-38). Third, DirecTV claims that with respect to each technician, the Court would have to engage in individualized inquiries to determine whether DirecTV was a joint employer.[7]

---

[6]In Dukes, "one of the most expansive class actions ever," 1.5 million plaintiffs sought class certification under Rule 23(a), Fed.R.Civ.P., in a Title VII action against their employer for sex discrimination. The Supreme Court reversed class certification for failure to show a single company-wide policy.

[7]DirecTV identifies the following issues:
- What piece rate system, if any, was utilized by the plaintiff's employer;
- Whether techs at each employer were paid for productive and nonproductive time;
- Whether an hourly rate was paid for certain tasks;
- Whether there was an understanding that the piece rate pay was to cover all hours worked;
- Whether the technician's employer required techs to keep a timesheet;
- What instructions the technician received with respect to recording time;
- Whether the technician under reported, accurately reported, or over reported working time;
- Whether the technician's employer paid overtime premiums that were properly calculated;
- What the employer paid techs when piece rate earnings did not meet minimum wage;
- What work, if any, the technician performed off the clock and if the employer knew about it;
- Whether the technician was subjected to any charge backs by the employer, and if so, whether the charge backs brought the technician below the applicable minimum wage;
- Whether the individual technician entered independent contractor agreements either with an

Manageability is an issue for the second stage of the conditional certification analysis. See Sharpe, 2010 WL 135168, at *7. Once potential class members have opted in and the scope of the class is determined, if the Court has a concern that some of the class members will not be similarly situated, it can narrow the class, create subclasses at the second stage, or decertify the entire class. See e.g., Fast v. Applebee's Int'l, Inc., 2009 WL 2391921, at *1 (W.D. Mo. 2009) ("Any challenges which might be posed by [differences in Plaintiffs' situations which vary by restaurant] will be addressed through dividing the class into subclasses by restaurant."); Ingraham v. Dixon Ambulance Dist., 2010 WL 4534038, at *2 (W.D. Mo. 2010) (the court can create subclasses if individual issues affect the analysis).

With respect to the logistical issues presented by the pendency of other cases involving DirecTV HSPs, this Court previously ruled there is nothing in the FLSA that precludes this case from proceeding simultaneously with Lang, even though the same issues would likely be raised in both matters. (Doc. No. 49, pp. 3-4, 8-9). Moreover, Plaintiffs have stated they do not intend to include claims of individuals that have valid arbitration agreements with DirecTV in this action.[8] Finally, as discussed above, individualized differences do not preclude conditional

---

- HSP or a subcontractor that includes an indemnification provision for any FLSA violations;
- Whether the technician is barred from recovering because he was part of a state wage and overtime opt-out class or because he opted into another FLSA action; and
- Whether the technician and his/her employer are parties to an arbitration agreement that would preclude the technician from joining the class.

(Response, p.38).

[8] Plaintiffs "do not seek to include the claims of technicians for the time period for which they (1) were classified as W-2 employees of DirecTV and (2) had signed an arbitration agreement." (Motion for Conditional Collective Action Certification, Doc. No. 70, p. 14 n 136).

"For the sake of clarity, Plaintiffs do not seek to include claims covered by valid arbitration agreements." (Plaintiffs' Response to Defendants' Sur-Reply, Doc. No. 103-1, p. 6).

certification at this stage of the analysis. Espenscheid v. DirecStat USA, LLC, 2010 WL 2330309, at *8 (W.D. Wis. June 7, 2010) (quoting Sjoblom v. Charter Communications, LLC, 2007 WL 4560541, at *9 (W.D. Wis. Dec. 19, 2007) ("Detailed arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are best raised after the parties have conducted further discovery and can present a more detailed factual record for the court to review.")). See also Dominguez, 2007 WL 2422837, at *3 ("Arguments concerning the individualized inquiries required and the merits of Plaintiffs' claims are inappropriate at this stage of the proceeding and can be raised before the Court at the second, or decertification, stage."). "Simply identifying differences between the parties is not enough to defeat a motion for class certification at this notice stage." Ondes, 2011 WL 6152858, at *6 (internal citations omitted). "Even if these differences may affect the plaintiffs' ability to prove liability, the Court does not reach the merits of the parties' claims and defenses at the certification stage." Id.

### Plaintiffs as Class Representatives

Finally, DirecTV argues Plaintiffs Arnold and Feger are not appropriate class representatives because it is likely they will not have been employed by AeroSat during the relevant class period. In addition, DirecTV claims both Arnold and Feger have credibility issues that are not applicable to the class generally, because they lied on their AeroSat employment applications with respect to their criminal records. (Response, p. 39-40). Credibility determinations cannot be made at this stage of the litigation. Loomis v. CUSA, LLC, 257 F.R.D. 674, 676 (D.Minn. 2009). Moreover, a claim that a class representative is improper goes to the merits of Plaintiffs' claim and is not yet ripe for resolution. Ondes, 2011 WL 6152858, at *6 (citing Schleipfer v. Mitek Corp., 2007 WL 2485007, at *4 (E.D. Mo. Aug. 29, 2007)).

### Notice and Class Lists

The Court ordered supplemental briefing from the parties regarding the scope of Plaintiffs' proposed class in light of Lang. In Lang, the court conditionally certified the following class:

> All persons who, at any time after December 30, 2008, engaged in the installation, service and/or upgrading of satellite equipment systems at DirecTV customer sites in the contiguous United States, and who were compensated on a piece-rate basis as an alleged independent contractor.

Plaintiffs' proposed class includes the same independent contractor technicians covered in the Lang class, and adds technicians employed by and who received W-2s from DirecTV, Inc., DirecTV Home Services, the HSPs, or the HSP subcontractors. Plaintiffs have provided proposed notice and consent forms as well as a proposed order regarding the class list and notice dissemination. (Doc. Nos. 119-10, -11 and -12). Plaintiffs also state they will remove the names of any technicians who received notice in Lang from the class list before notice is disseminated. (Id., p. 2).

In response, DirecTV reiterates its argument that Plaintiffs have not presented any evidence of a common policy that applies to the class they seek to certify. (Defendants' Response to Plaintiffs' Supplemental Briefing, Doc. No. 120, pp. 3-5). Defendants further argue that Plaintiffs have failed to address the manageability issues with their proposed class, (Id., pp. 6-8) or how they will coordinate this case with other pending litigation involving subsets of the Arnold class. (Id., pp. 8-10). The Court is mindful of the manageability concerns expressed by DirecTV in its briefing and oral argument; however, as discussed above, manageability issues are properly left for the second stage of the proceedings. Again, the Court has found Plaintiffs' allegations sufficient to meet their modest burden for conditional certification.

Given the identity of issues concerning the notice process and class list in this case and Lang, as well as the fact that these issues have already been resolved in Lang, the Court is persuaded to follow the precedent set by the Eastern District of Louisiana.

### Conclusion

For the foregoing reasons, Plaintiffs motion for conditional collective action certification will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Conditional Collective Action Certification [70] is **GRANTED**, and the Court conditionally certifies a class of:

> Persons who (1) are currently working or previously worked as an Installation or Service Technician for DirecTV, Inc., DirecTV Home Services, a DirecTV Home Service Provider, or through one of their subcontractors, for any period of time after July 22, 2008; (2) exclusively installed and/or serviced DirecTV equipment; (3) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they competed; and (4) worked more than 40 hours per week.

**IT IS FURTHER ORDERED** that Plaintiffs Arnold and Feger are conditionally authorized to act as class representatives.

**IT IS FURTHER ORDERED** that Stueve and Siegel, LLP and Hearin, LLC are authorized to act as class counsel.

**IT IS FURTHER ORDERED** that Plaintiffs shall file their proposed Notice of Lawsuit and Consent to Become a Party Plaintiff against DirecTV on or before October 15, 2012.

**IT IS FURTHER ORDERED** that DirecTV is granted until October 30, 2012 within which to make any written objections to Plaintiffs' proposed Notice of Lawsuit against DirecTV.

**IT IS FURTHER ORDERED** that DirecTV shall provide Plaintiffs' attorneys with the names and current or last known mailing addresses of all employees who may be potential plaintiffs in this suit on or before November 15, 2012.

Dated this 28th day of September, 2012.

*/s/ John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE