UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAMIE ARNOLD, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 4:10-CV-00352-JAR |
| v. | ) ) ) | |
| DIRECTV, INC. d/b/a DIRECTV HOME SERVICES, et al., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss, or in the Alternative, Stay with Respect to the Mastec and Multiband Opt-Ins. (Doc. No. 181) The motion is fully briefed and ready for disposition. For the following reasons, the motion is granted in part and denied in part.

**Background**

This is an action for unpaid wages and overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. §§ 290.500-530. Plaintiffs worked as satellite installation and repair technicians for Defendants DirecTV, Inc. d/b/a DirecTV Home Services, and DTV Home Services II, LLC ("DirecTV"), and their three "predecessors-in-liability." On September 28, 2012, the Court conditionally certified an FLSA collective action of persons who (1) worked as installation or service technicians for DIRECTV, third-party Home Services Providers ("HSPs"), or through one of their subcontractors, since May 1, 2009, (2) exclusively installed or serviced DIRECTV

1

equipment, (3) received compensation on a piece-rate basis, and (4) worked more than 40 hours per week. (Doc. No. 121)

Following conditional certification, more than 3,000 individuals opted into this lawsuit. A number of these opt-in plaintiffs worked as W-2 employees of HSP MasTec Services Company, Inc. ("MasTec") and HSP Multiband Corporation ("Multiband"). In connection with their employment, the MasTec opt-ins entered into either the 2007 or 2013 MasTec Dispute Resolution Policy ("MasTec DRP Agreement")[1], and the Multiband opt-ins entered into the 2010 Multiband Open-Door Policy and Arbitration Agreement ("2010 Multiband Arbitration Agreement") and/or the 2012 Multiband Arbitration Agreement ("2012 Multiband Arbitration Agreement").[2] DirecTV contends that by doing so, these individuals entered into valid arbitration agreements encompassing all of their claims in this action, and, in breach of these agreements, joined this litigation instead of pursuing individual arbitrations. DirecTV moves for an order dismissing or, in the alternative staying the MasTec and Multiband opt-ins' claims against it

---

[1] The 2007 and 2013 MasTec DRP Agreements are virtually identical, and encompass any dispute "arising out of" or "related to" the employee's employment "that otherwise would be resolved in a court of law," and explicitly cover claims arising under the FLSA. (Declaration of Lois Chambers ("Chambers Dec."), Doc. No. 182-2, p. 1) Both Agreements state that such disputes must "be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." (Id.) Each further state "there will be no right or authority" for any dispute to be "brought, heard or arbitrated" as a class or collective action. (Id., pp. 1-2)

[2] The 2010 Multiband Arbitration Agreement covers "[d]isputes arising to the level of a legal claim between [the employee] and the company (or any of its affiliates, officers, directors, managers or associates) relating to [the employee's] employment with the company," including, but not limited to, "claims regarding wages or compensation." (Declaration of Lisa McCreight ("McCreight Dec."), Doc. No. 182-12, p. 15) To that end, the agreement directs that neither party may pursue covered claims in court but must instead resolve them "exclusively through binding arbitration." (Id.) The Agreement further provides: "By signing this policy, you and the company also agree that a claim may not be arbitrated as a class action, also called 'representative' or 'collective' actions, and that a claim may not otherwise be consolidated or joined with the claims of others." (Id., p. 16)

Similarly, the 2012 Multiband Arbitration Agreement explains that the employee is, in lieu of litigation, "required to arbitrate any and all disputes, claims, or controversies ('claim') against the Company that could be brought in a court including, but not limited to, all claims arising out of [his or her] employment . . . ." (Id., p. 18) The agreement explicitly covers claims under the FLSA and applies to covered claims advanced by both parties. (Id.) The agreement further provides that "[t]he parties agree all claims must be pursued on an individual basis only" and explains that the employee waives the right to "commence, or be a party to, any class or collective claims or to bring jointly any claim against the Company with any other person," except to collectively challenge the enforceability of the agreement. (Id.)

2

pending individual arbitrations in accordance with these agreements. Plaintiffs do not contest the validity of the agreements; rather, they argue that DirecTV, a non-signatory, may not enforce the agreements.

**Parties' arguments**

DirecTV argues that because Plaintiffs and, by extension, the MasTec and Multiband Opt-ins, have consistently alleged a joint employment relationship between DirecTV and third-party HSPs, including MasTec and Multiband, and seek to hold DirecTV liable for the alleged wage and hour violations arising during their employment at the HSPs, it may enforce the MasTec and Multiband arbitration agreements. (Mem. in Supp., Doc. No. 182, p. 2) In support of its motion, DirecTV relies on Carter v. Affiliated Computer Services, Inc., 2010 WL 5572078 (W.D. Ark. Dec. 15, 2010) and Carter v. MasTec Services Company, Inc., 2010 WL 500421 (D.S.C. Feb. 5, 2010). (Doc. No. 182, p. 13)

In Affiliated Computer Services, an FLSA action, defendants ACS, Xerox and ACS@Xerox moved to compel arbitration because plaintiffs had agreed to a Dispute Resolution Program (DRP) requiring ACS employees to submit to arbitration. Plaintiffs argued Xerox and ACS@Xerox could not compel arbitration because they were not parties to the DRP. Noting the close relationship between all three defendants, and plaintiffs' claim that all defendants were plaintiffs' "joint employers," the court allowed Xerox and ACS@Xerox to compel arbitration. "Plaintiffs cannot be permitted to argue Defendants are joint employers while, at the same time, argue their relationship is not so close that all Defendants cannot compel arbitration." 2010 WL 5572078, at *4. Likewise, in Carter v. MasTec, the court permitted DirecTV, a non-signatory, to enforce MasTec's DRP agreement in the context of an FLSA claim because plaintiffs' claims against it were "inherently inseparable" from the claims they asserted against MasTec. 2010 WL

500421, at *4. "Plaintiffs allege that DirecTV and MasTec committed the same misconduct by failing to compensate them for overtime work performed; therefore, Plaintiffs allegations against both Defendants are substantially interdependent of each other." Id. at *5.

In response, Plaintiffs argue they have asserted no claims against either MasTec or Multiband. Moreover, DirecTV has offered no evidence of its relationship with MasTec or Multiband, and in fact, has denied liability as a joint employer for the alleged FLSA violations. (Mem. in Opp., Doc. No. 183, pp. 4-5) Plaintiffs further argue that DirecTV has taken the position that the HSPs are independent contractors, obligated to provide their own equipment and personnel to perform the work orders issued by DirecTV. (Id.)

DirecTV replies that the MasTec and Multiband opt-ins cannot avoid their obligation to arbitrate simply because MasTec and Multiband are not named defendants, citing Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 528 (5th Cir. 2000) ("[I]t would be especially inequitable where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant. In such instances, that signatory, in essence, becomes a party, with resulting loss, *inter alia*, of time and money because of its required participation in the proceeding. Concomitantly, detrimental reliance by that signatory cannot be denied: it and the signatory-plaintiff had agreed to arbitration in lieu of litigation (generally far more costly in terms of time and expense); but, the plaintiff is seeking to avoid that agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory.") (Reply, Doc. No. 184, pp. 4-5)

DirecTV also contends there is no authority suggesting that a non-signatory cannot enforce an arbitration agreement when the parties dispute whether it is a joint employer. (Id., p. 5) In particular, DirecTV notes that in Carter v. MasTec, 2010 WL 500421, the court determined

4

that DirecTV could enforce MasTec's arbitration agreement in the context of an FLSA collective action despite the fact that DirecTV denied employing the plaintiffs. (Reply, Doc. No. 184, pp. 5-6)

**Discussion**

State contract law determines whether a non-signatory can enforce the provisions of an arbitration clause. Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009). See also, Donaldson Co. Inc v. Burroughs Diesel, Inc., 581 F.3d 726, 732 (8th Cir. 2009) ("A litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement."). In this case, Plaintiffs work or last worked in 31 different states. (Doc. No. 184, p. 10) Plaintiffs have not, however, cited any state law that holds that a non-signatory may not enforce an arbitration agreement, nor do Plaintiffs contend that the law in the relevant states is different than the federal common law applied by the Eighth Circuit. When the available state law is sparse, the Court may look primarily to federal law. Barton Enterprises, Inc. v. Cardinal Health, Inc., 2010 WL 2132744, at *3 (E.D. Mo. May 27, 2010) (citing PRM Energy Sys., Inc. v. Primenergy, LLC, 592 F.3d 830, 834 (8th Cir. 2010)).

A non-signatory may compel a signatory to arbitrate claims in limited circumstances. PRM, 592 F.3d at 834; CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005). One such circumstance relies on agency principles, and allows a non-signatory to compel arbitration when the relationship between the non-signatory and signatory is so close that failing to do so would "eviscerate the arbitration agreement." PRM, 592 F.3d at 834; CD Partners, 424 F.3d at 798.

Here, Plaintiffs claim that DirecTV is/was a joint employer with MasTec, Multiband and other HSPs, and that together these entities acted in violation of the FLSA. (Amended Complaint

5

("AC"), Doc. No. 13, ¶ 23-24, 26, 44) In their motion for conditional certification, Plaintiffs asserted that DirecTV "exerted control over the hiring at the HSP network," "exerted control over who retained employment," "exerted control over Technicians' schedule[s] and employment conditions," "exerted control over Technicians' pay," and "has, and exercises, the right to inspect HSP records." (Motion for Conditional Collective Action Certification, Doc. No. 70, pp. 7, 16-24) Plaintiffs' allegations were based in part on agreements between DirecTV and the individual HSPs, which they asserted "are the same for all members of the HSP Network" and "lay out requirements for those [HSP] entities and their subcontractors." (Id., p. 7) The HSP agreements also contain an indemnification provision in favor of DirecTV for liability arising out of the HSPs' failure to properly compensate its workforce. (Id., p. 8 n. 3; Doc. No. 75-2 (Whittrock Dep. Ex. 8), ¶ 18) The Court found these facts sufficient for Plaintiffs to sustain their burden for conditional certification on the joint employer issue. (Doc. No. 121, p. 8)

      The fact that DirecTV denies it is the joint employer of Plaintiffs is not dispositive. In Gadberry v. Rental Service Corp., 2011 WL 767034, at *3 (D.S.C. Jan. 21, 2011), for example, plaintiff brought an employment action against his former employer, RSC, with whom he had an arbitration agreement, and Matrix, an employee benefits administrator for RSC. Matrix, while maintaining it was not plaintiff's employer and therefore not liable under the federal employment statutes, argued that plaintiff's claims against it were subject to arbitration. Because plaintiff's complaint raised the identical claims against Matrix that he asserted against RSC, and because the claims appeared to be substantially based on the same factual allegations, the Court found plaintiff was estopped from avoiding arbitration with Matrix on those claims, citing Carter, 2010 WL 500421, at *4.

6

Under the present facts, the Court finds there is a close relationship between DirecTV and MasTec and Multiband. As in Carter v. ACS, if DirecTV is not permitted to compel arbitration against the MasTec and Multiband opt-ins, their case would be separately litigated in this Court while their claims against MasTec and Multiband were arbitrated. 2010 WL 5572078, at *4. Due to the close relationship between DirecTV and MasTec and Multiband, and Plaintiffs' allegations of joint employment and conduct in violation of the FLSA by DirecTV and its HSPs, including MasTec and Multiband, if DirecTV was not permitted to compel arbitration, then the MasTec DRP Agreements and Multiband Arbitration Agreements would be "practically eviscerated." Id. Accordingly, the Court concludes that DirecTV should be permitted to compel arbitration. PRM, 592 F.3d at 834; CD Partners, 424 F.3d at 798. "Plaintiffs cannot be permitted to argue Defendants are joint employers while, at the same time, argue their relationship is not so close that all Defendants cannot compel arbitration." Carter, 2010 WL 5572078, at *4.

Under the Federal Arbitration Act, when a court finds the claims raised in an action are properly referable to arbitration, it should generally stay the action until arbitration proceedings are concluded. 9 U.S.C. § 3; see also Fleischli v. North Pole US, LLC, 2013 WL 1965120, at *14 (E.D. Mo. May 10, 2013).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or, in the Alternative, Stay with Respect to the MasTec and Multiband Opt-Ins [181] is **GRANTED** in part and the claims of the MasTec and Multiband Opt-Ins are stayed pending the outcome of arbitration proceedings. In all other respects, Defendants' motion is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall report on the status of the arbitration proceedings at the Court's monthly status conferences.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 25th day of November, 2013.