UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMIE ARNOLD, CLINTON FEGER, )
STEVEN PARR, ARNOLD BRAGG, )
DENDRICK STOKES, ROBERT )
ELLENDORF, JOSEPH COLLINS and )
JULIENNE MERTENS, individually and )
on behalf of all others similarly situated, )
)
      Plaintiffs, ) No. 4:10-CV-352-JAR
)
v. )
)
DIRECTV, LLC, et al., )
)
      Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motions to Sever and to Transfer Claims. (Doc. Nos. 222, 224) The motions are fully briefed and ready for disposition.[1] For the following reasons, the motions will be denied.

**Background**

On May 5, 2010, Plaintiffs Jamie Arnold and Clinton Feger, on behalf of themselves and others similarly situated, filed their First Amended Complaint against DIRECTV, Inc. d/b/a DIRECTV Home Services ("DirecTV") and DTV Home Services II, LLC.[2] (First Amended Complaint ("FAC"), Doc. No. 13) They alleged that their employer, Home Service Provider

---

[1] Defendants have requested oral argument. Finding that oral argument would not assist the Court, the request is denied.

[2] Since the filing of this action, DIRECTV, Inc. merged into DIRECTV, LLC and out of existence. In their Second Amended Complaint, Plaintiffs have added DIRECTV, LLC as a Defendant. DIRECTV, LLC does business as DIRECTV Home Services.

("HSP") AeroSat USA, LLC, failed to pay minimum wage and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Missouri Minimum Wage Law ("MMWL") and sought to hold the DirecTV Defendants liable as alleged joint employers. (Id. at ¶¶ 2-4, 23) On September 28, 2012, the Court conditionally certified a class of:

> Persons who (1) are currently working or previously worked as an Installation or Service Technician for DirecTV, Inc., Direct TV Home Services, a Direct TV Home Service Provider, or through one of their subcontractors, for any period of time after July 22, 2008; (2) exclusively installed and/or serviced DirecTV equipment; (3) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; and (4) worked more than 40 hours per week.

(Doc. No. 121 at 17) The Court later modified the relevant time period to May 1, 2009 to the present. (Doc. No. 134 at 8-9)

Following conditional certification, over 3,000 individuals opted-in to this case. By agreement of the parties, Plaintiffs dismissed those Opt-ins who signed arbitration agreements with either DirecTV or 180 Connect/Ironwood. (Doc. Nos. 180-1, 186) The claims of the MasTec and Multiband Opt-ins were stayed pending the outcome of arbitration proceedings. (Doc. No. 190) In addition, the Court dismissed without prejudice those Opt-in Plaintiffs who failed to respond to the parties' discovery questionnaire. (Doc. No. 214)

After a status conference with counsel, the Court entered an Amended Case Management Order on July 28, 2014 (Doc. No. 216), which led to the filing of Plaintiffs' Second Amended Complaint ("SAC") on September 11, 2014. (Doc. No. 220) Plaintiffs have since filed a Third Amended Complaint ("TAC") (Doc. No. 279) to clarify their claims and remove certain opt-in Plaintiffs from the various subclasses established by the Court's Amended CMO based on discovery conducted by the parties. The Court will, therefore, consider DirecTV's motions in relation to the allegations of the TAC for purposes of its ruling herein.

In the TAC, Plaintiffs Steven Parr, Robert Ellendorf, Robert Guice and Julienne Mertens are added as named Plaintiffs, in addition to the original named Plaintiffs, Plaintiffs Jaime Arnold and Clinton Feger. The named Plaintiffs were directly employed by four different entities: Arnold and Feger were employed by DTV Home Services II, LLC (AeroSat) (id. at ¶¶ 10-11); Parr was employed by Multiband, Inc. (id. at ¶ 12); Ellendorf was employed by MasTec, Inc. (id. at ¶ 13); Guice was employed by DirectSat USA, LLC (id. at ¶ 14); and Mertens was employed by DirecTV Home Services. (Id. at ¶ 15) Plaintiffs seek to hold the DirecTV Defendants liable for their FLSA and MMWL claims as joint employers of Plaintiffs and other similarly situated technicians. (SAC at ¶ 23)

The four FLSA subclasses defined in the SAC consist of W-2 employees vis a vis their HSP employer:

**MasTec subclass**

Persons listed on the attached Exhibit A who (1) filed a consent to join this lawsuit; (2) are currently working or previously worked as an Installation or Service Technician for MasTec, Inc. as a W-2 employee for any period of time within 3.5 years of the date of consenting to join the suit; (3) exclusively installed and/or serviced DirecTV equipment; (4) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; and (5) worked more than 40 hours in a week.

**Multiband subclass**

Persons listed on the attached Exhibit A who (1) filed a consent to join this lawsuit; (2) are currently working or previously worked as an Installation or Service Technician for Multiband Corporation as a W-2 employee for any period of time within 3.5 years of the date of consenting to join the suit; (3) exclusively installed and/or serviced DirecTV equipment; (4) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; and (5) worked more than 40 hours in a week.

**DirectSat subclass**

Persons listed on the attached Exhibit A who (1) filed a consent to join this lawsuit; (2) are currently working or previously worked as an Installation or Service Technician for DirectSat USA LLC as a W-2 employee for any period of time within 3.5 years of the date of consenting to join the suit; (3) exclusively installed and/or serviced DirecTV

equipment; (4) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; and (5) worked more than 40 hours in a week.

### DirecTV Home Services subclass

Persons listed on the attached Exhibit A who (1) filed a consent to join this lawsuit; (2) are currently working or previously worked as an Installation or Service Technician for DIRECTV, LLC d/b/a DIRECTV Home Services as a W-2 employee for any period of time within 3.5 years of the date of consenting to join the suit; (3) exclusively installed and/or serviced DirecTV equipment; (4) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; and (5) worked more than 40 hours in a week.

(SAC at ¶ 27)

The purported Rule 23 subclass is limited to Missouri employees of DTV Home Services II, LLC (formerly AeroSat):

Persons who are currently working or previously worked as Installation or Service Technicians within the State of Missouri for DTV Home Services II, LLC or its predecessors Up Communications Services, LLC and AeroSat USA, LLC as a W-2 employee for any period of time from March 2, 2008 to the present; (3) exclusively installed and/or serviced DirecTV equipment; (4) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; (5) worked more than 40 hours in a week; and (6) are not subject to a valid and enforceable agreement requiring these claims to be arbitrated.

(SAC at ¶ 30)

MasTec is a Florida corporation headquartered in Coral Gables, Florida. (Doc. No. 223-2 at ¶ 5) Multiband is incorporated and headquartered in Minnesota. (Doc. No. 223-3 at ¶ 2) DirectSat is a limited liability company formed under Delaware law and headquartered in Pennsylvania. (Doc. No. 223-4 at ¶ 5) DirecTV, LLC is a limited liability company formed under the laws of California with its principal place of business in El Segundo, California. (SAC at ¶ 7)

DirecTV moves the Court to sever the claims of the subclasses and transfer them to the judicial districts in which each of the direct employers is headquartered or alternatively, to the district courts in the jurisdictions where the largest numbers of subclass members reside.

**Legal standard**

"When transferring a portion of a pending action to another jurisdiction, district courts first must sever the action under Rule 21 before effectuating the transfer." Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1519 (10th Cir. 1991) (internal citations omitted). This is because 28 U.S.C. § 1404(a) only authorizes the transfer of an entire action, not individual claims. Id. See also St. Paul Fire & Marine Ins. Co. v. Servidone Constr. Corp., 778 F.Supp. 1496, 1507-08 (D.Minn. 1991); 3A Moore's Federal Practice ¶ 21.06[2] (Matthew Bender 3d ed.). "But where certain claims in an action are properly severed under Fed.R.Civ.P. 21, two separate actions result; a district court may transfer one action while retaining jurisdiction over the other." Chrysler Credit, 928 F.2d at 1519. Accordingly, the Court must first determine whether severance of Plaintiffs' claims is appropriate.

Severance under Rule 21 is a matter of discretion for the Court, "and in exercising that discretion, courts typically consider the same general factors underlying the § 1404(a) analysis, including judicial economy, efficiency, witness convenience, the location of and access to sources of proof, the potential for delay, and similar factors." Sprint Communications Co. L.P. v. K.I.M. Telephone Co., 2014 WL 4426275, at *1 (W.D.Mo. Sept. 9, 2014) (quoting Reinholdson v. Minnesota, 346 F.3d 847, 850 (8th Cir.2003)).

**Discussion**

In support of its motion to sever, DirecTV argues it will be prejudiced absent severance because Plaintiffs' claims depend on highly individualized evidence relating to each Plaintiff's employment experience and the procedures of each HSP. DirecTV contends it would be difficult for a jury to avoid confusion when faced with such distinct evidence. DirecTV also notes logistical challenges associated with organizing and presenting that evidence given that certain

witnesses may be outside the Court's subpoena power. (Doc. No. 225 at 8-10) For this reason DirecTV argues that judicial economy favors severance since relevant witnesses would be located in the jurisdictions in which Plaintiffs worked or where their direct employers are based. (Id. at 10)

In response, Plaintiffs assert that DirecTV's status as an "employer" under the FLSA is a question common to all the subclasses and focused on DirecTV's conduct, i.e., its uniform application of policy, piece-rate pay system, control over work schedules and employment status, and management of the HSPs. (Doc. No. 231 at 9) Further, the challenges of trying the subclasses is not insurmountable as the CMO was designed to ensure the manageability of this action. (Id. at 11) Lastly, Plaintiffs argue that severance of this five-year-old case would further prejudice them through delay and increased litigation costs if made to litigate the same factual and legal issues separately. (Id. at 12)

This case has been pending since March 2010 and the parties have litigated case management issues for several months. In March 2014, Plaintiffs proposed subclasses for discovery and trial, which DirecTV opposed, arguing for decertification. The Court considered DirecTV's arguments and rejected them. In July 2014, the Court endorsed the subclasses, finding they addressed the difficulties involved with securing common sources of proof for installation technicians paid through a decentralized group of subcontracting entities. The parties then negotiated a Case Management Order which lays out a path to a consolidated trial on all subclasses. (See Doc. No. 216) Pursuant to the CMO, Plaintiffs were instructed to name subclass representatives and identify the Plaintiffs who remained in each subclass in an amended complaint. DirecTV was permitted to depose ten members of each subclass, for a total of fifty depositions. The Court followed the parties' agreed-upon scheduling and ordered one trial on all

subclasses. At that time DirecTV did not raise any issue of severing or transferring the subclasses and raised no objections to the Court's continued management of the case. DirecTV is now asking the Court to effectively reconsider the CMO by severing the subclasses based on arguments similar to those it raised in opposition to Plaintiffs' proposed case management plan.

The Court has determined that this case presents common issues of fact and law which make it suitable to proceed as a representative action with certain defined subclasses. DirecTV raises no new arguments in support of its motion to sever that would cause the Court to reconsider the course of action agreed to by the parties in the current CMO. Accordingly, DirecTV's motion to sever will be denied.

Because the motion to sever will be denied, the motion to transfer becomes moot. As discussed above, § 1404(a) only authorizes the transfer of an entire action, not individual claims, unless those claims are severed under Rule 21.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Sever Claims [224] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Transfer [222] is **DENIED** as moot.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Dated this 21st day of April, 2015.