**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMIE ARNOLD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:10-CV-352 JAR |
| | ) | |
| DIRECTV, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motions for Summary Judgment as to the Claims of the DirecTV Home Services Plaintiffs (Doc. No. 315), Plaintiffs Jamie Arnold and Clinton Feger (Doc. No. 322), the DirectSat Plaintiffs (Doc. No. 329), the MasTec Plaintiffs (Doc. No. 336), and the Multiband Plaintiffs (Doc. No. 355). The motions have been extensively briefed and are ready for disposition.[1]

**I.      Background**

Plaintiffs are former satellite installation and service technicians classified as W-2 employees of one of DirecTV's Home Services Providers ("HSPs") - DirecTV Home Services, DirectSat, MasTec, and Multiband. Plaintiffs claim entitlement to overtime compensation from DirecTV for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. §§ 290.500 et seq. Plaintiffs' central allegation is that the piece rate pay system used throughout DirecTV's provider network only compensates technicians for specific line items in completed work orders and fails to compensate technicians for other required work deemed nonproductive (Doc. No. 403 at 6). The

---

[1] The Court held oral argument on December 17, 2015. Since that time the parties have worked together on a number of different issues in the case. The motions are now finally submitted for the Court's ruling.

Court conditionally certified Plaintiffs' FLSA claim to proceed as a collective action on four FLSA subclasses[2] (Doc. Nos. 121, 134, 200). Plaintiffs have also moved for Rule 23 class action certification to pursue their Missouri state law claims on behalf of a subclass of DTV Home Services technicians (formerly AeroSat technicians).[3]

DirecTV moves for summary judgment on the grounds that Plaintiffs were paid in compliance with the FLSA and MMWL as a matter of law. Alternatively, DirecTV argues that if it was Plaintiffs' joint employer, as Plaintiffs allege, then Plaintiffs were exempt from overtime as a matter of law pursuant to the overtime exemption provided for in 29 U.S.C. § 207(i) (the "7(i) exemption"). Lastly, DirecTV argues summary judgment is required because Plaintiffs have not met their burden of proof with respect to damages.

## II.    Legal standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc., 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmovant must do more than show there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing a genuine dispute of a material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is

---

[2] DirecTV has moved to decertify these subclasses (see Doc. Nos. 319, 326, 333, 352), which motions will be addressed by the Court in a separate order.

[3] Plaintiffs' Motion for Rule 23 Certification (Doc. No. 241) will also be addressed in a separate order.

such that a reasonable jury could return a verdict for the nonmoving party.'" Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting Anderson, 477 U.S. at 248).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the non-movant and give that party the benefit of any inferences that logically can be drawn from those facts. Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir. 1993) (citing Anderson, 477 U.S. at 251-52).

### III.    Discussion

The FLSA requires employers to pay an employee for overtime (any time in excess of 40 hours in a single workweek) at a rate "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); IBP, Inc. v. Alvarez, 546 U.S. 21, 25 (2005). The employer's obligation under the MMWL is the same. See Mo. Rev. Stat. § 290.505.1.[4] Thus, "[c]alculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement." O'Brien v. Town of Agawam, 350 F.3d 279, 294 (1st Cir. 2003).

The term "regular rate" is defined by 29 U.S.C. § 207(e), which provides that an employee's regular rate "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." The Supreme Court has described the regular rate as "the hourly rate actually paid the employee for the normal, non-overtime workweek," and held that it "must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." Walling v. Youngerman-Reynolds Hardwood Co.,

---

[4] Missouri law regulating overtime compensation is to be interpreted in accordance with the FLSA. See Mo. Rev. Stat. § 290.505.4.

325 U.S. 419, 424-25 (1945)). Thus, an employee's "regular rate" is a factual question, which must be determined based on how compensation is paid under the governing employment agreement. O'Brien, 350 F.3d at 294; see also Hanson v. Camin Cargo Control, Inc., No. H-13-0027, 2015 WL 1737394, *6 (S.D. Tex. Apr. 16, 2015) ("the divisor in the regular rate calculation hinges on the parties' intent").

### A. Calculation of overtime premiums

Plaintiffs claim the HSPs (and by extension DirecTV) violated the FLSA and MMWL by failing to pay for all hours worked and by failing to pay the proper overtime premiums for all hours worked over 40 in a given workweek (Third Amended Complaint ("TAC"), Doc. No. 279 at ¶¶ 45, 51). To prevail on their claim, Plaintiffs have "the burden of proving that [they] performed work for which [they were] not properly compensated." Holoway v. Stratasys, Inc., 771 F.3d 1057, 1059 (8th Cir. 2014) (internal citations omitted). DirecTV argues that Plaintiffs cannot meet this burden because (1) the undisputed facts demonstrate that Plaintiffs were paid for all hours worked, and (2) DirecTV properly calculated Plaintiffs' overtime premiums.

DirecTV asserts that Plaintiffs were paid for each hour worked, as evidenced by their earnings statements and paystubs, which are the controlling evidence for determining for what work Plaintiffs were paid. See Carmody v. Kan. City Bd. of Police Comm'rs, 713 F.3d 401, 406 (8th Cir. 2013) ("When an employer maintains accurate time records, as required under the FLSA, employees can satisfy their evidentiary burden by securing those accurate time records.") (internal citation omitted). Plaintiffs have not challenged the accuracy of their time records, and admit they are not seeking compensation for hours worked but not reported (i.e., an "off the clock" claim). Thus, DirecTV argues that Plaintiffs' paychecks, listing the amount of pay next to

the hours of work covered by that pay, conclusively show payment for all hours worked – productive and nonproductive.

DirecTV further argues the technicians' overtime pay was calculated in compliance with the FLSA and its regulations, and controlling Supreme Court precedent. See Walling, 325 U.S. at 419 (holding that "[i]n the case of piece work wages, this regular rate coincides with the hourly rate actually received for all hours worked during the particular workweek, such rate being the quotient of the amount received during the week divided by the number of hours worked"); see also DOL Field Operations Handbook, Chapter 32, Section 32b00 (Doc. No. 247-31) ("[a]n employee's regular rate of pay is computed by dividing his total remuneration for his hours worked in the w/w, minus any true OT pay and any other specific statutory exclusions, by the number of hours of work for which the remuneration was paid"). Here, DirecTV asserts that a technician's regular rate for any workweek is determined by dividing the individual's total earnings from the workweek by the number of hours reported on their timesheets. Technicians are paid the regular rate for all hours worked up to and including 40 hours, and 1.5 times their regular rate of pay for all hours worked over 40 in the workweek.[5]

In response, Plaintiffs do not challenge the formula used to calculate overtime pay, but argue that the regular rate of pay was incorrectly calculated. According to Plaintiffs, several tasks were not associated with a line item or work order, such as traveling between jobs, attending weekly meetings, receiving and reviewing work schedules, calling customers, and organizing and maintaining work vehicles. Thus, the time spent performing those tasks was "non-

---

[5] Overtime premiums for DirectSat technicians were calculated in the same way. MasTec and Multiband technicians were paid an overtime premium of half their regular rate of pay for all hours worked over 40 in a work week. DirecTV notes that paying an overtime premium of half the regular rate in addition to the piece rate pay is mathematically equivalent to paying the regular rate of pay for the first 40 hours worked plus 1.5 times the regular rate for hours over 40 (Doc. No. 323 at 3 n. 1; Doc. No. 330 at 10 n. 8; Doc. No. 337 at 9 n. 5). Plaintiffs do not dispute this.

productive" time that was not "counted and paid for" under the piece rate pay system in violation of the FLSA's requirement that a worker be compensated for all hours worked. See 29 C.F.R. §§ 778.311, .318(a).[6] Plaintiffs argue that by including all hours worked in the regular rate calculation, regardless of whether compensation was in fact paid for those hours, DirecTV (and its HSPs) have deflated the regular rate of pay, because they are dividing not by the hours that were paid, but by the hours that were paid plus the hours that were not, which in turn impacts the overtime premium calculation.[7]

Relying on the FLSA's base-line overtime provision in § 207(a) and the regulations applying to piece-rate compensation systems, 29 C.F.R. §§ 778.111(a), .318, Plaintiffs further argue that their regular rate of pay was incorrectly calculated because there was no agreement

---

[6] Section 778.311 provides:

> "When an employee is employed on a piece-rate basis, his regular hourly rate of pay is computed by adding together his total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions): This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week."

Section 778.318(a) provides:

> Some agreements provide for payment only for the hours spent in productive work; the work hours spent in waiting time, time spent in travel on the employer's behalf or similar nonproductive time are not made compensable and in some cases are neither counted nor compensated. Payment pursuant to such an agreement will not comply with the Act; such nonproductive working hours must be counted and paid for.

[7] Plaintiffs illustrated their point during oral argument. Assume a technician is paid $700 for 50 hours of work; his regular rate would be $14.00 (700 ÷ 50). Also assume that 35 of those hours are productive hours, 10 hours are nonproductive (not associated with a line item or work order), and 5 hours are a one-time event such as warehouse clean-up. Dividing $700 by the "work for which compensation is paid," i.e., 35 hours, results in a regular rate of $20.00. The non-productive work, paid at that regular rate (15 × 20), would be $300. The overtime calculation for 10 hours of overtime (50 hours minus 40 hours in a workweek) multiplied by $20 and .5 is $100. So the hypothetical technician should have been paid $1100 – a difference of $330 from the $700 he was paid.

that piece-rate compensation for productive time included all hours worked, the productive as well as the nonproductive hours.

DirecTV argues that reliance on an agreement pursuant to § 778.318(c) is unnecessary because Plaintiffs' overtime premiums were properly calculated using the regular rate method, see 29 U.S.C. § 207(a), and not the alternative methodology set out in 29 U.S.C. § 207(g), which applies to employees who are paid on a piece rate basis and agree with their employer in advance of the work that those rules will apply.[8] Even if such an agreement was required, DirecTV contends this requirement was met because the Plaintiffs against whom DirecTV has moved for summary judgment had an understanding that the production pay they received compensated them for all hours worked.[9] It is undisputed that DirecTV Home Services Plaintiff Mertens signed weekly timesheet certifications at least 34 times, stating "I have accurately and honestly

---

[8] DirecTV also argues that AeroSat correctly calculated overtime premiums using the "job rate" method governed by 29 C.F.R. § 778.112, which does not require an agreement or understanding (Doc. No. 323 at 12-13). The court in Espenscheid v. DirectSat USA, LLC, No. 09-CV-625-BBC, 2011 WL 10069108 (W.D. Wis. Apr. 11, 2011), found this argument unpersuasive, noting that throughout their communications with technicians, defendants repeatedly described the pay system as a piece-rate system. Id. at *27. Here too, AeroSat characterized its compensation system as piece-rate, as evidenced by its own employee handbook and witness testimony (Doc. No. 432 at ¶¶ 104, 109, 113). Moreover, AeroSat technicians received other forms of compensation in addition to the rates they received for installations, such as hourly pay for training, or commission for sales of the DirecTV Protection Plan (id. at ¶ 111). Because the evidence of record shows that AeroSat technicians received additional compensation beyond the alleged "job rate," the Court agrees with the Espenscheid court's conclusion, based on virtually identical facts, that DirecTV uses a piece-rate system to compensate Plaintiffs. 2011 WL 10069108, at *28 (citing Winget v. Corporate Green, LLC, No. 09-0229, 2010 WL 2985546, at *4 (M.D. La. July 26, 2010) (finding that job-rate did not apply where employees were entitled to compensation "not just for the particular jobs performed, but also for travel time and for the weekly meeting")).

[9] Because the evidence that went to state of mind differed from opt-in to opt-in, DirecTV has limited its summary judgment motions on this issue to named Plaintiff Mertens for the DirecTV Home Services subclass (Doc. No. 431 at 24 n. 29); AeroSat technicians Arnold and Feger (id. at 26 n. 35); named Plaintiff Guice for the DirectSat subclass as well as the 72 Plaintiffs who signed DirectSat's Payroll Explanation and Compliance Form (id. at 29); named Plaintiff Parr for the Multiband subclass and the 61 Plaintiffs who worked pursuant to collective bargaining agreements between Multiband and the Teamsters (id. at 31 n. 47); and named Plaintiffs Ellendorf, Campbell, Corona, Foster, Jackson, Jallow, Middleswarth, and Scott for the MasTec subclass (id. at 34).

reported all of my working time and understand that the piece-rate production pay I receive includes compensation for all hours worked." (Doc. No. 399 at ¶ 49)

It is further undisputed that some DirectSat Plaintiffs (72 out of 112)[10] signed a "Payroll Explanation and Compliance Form," agreeing that the term "WORK," for purposes of reporting hours, included "traveling between jobs; any meetings with Supervisors; time spent preparing for jobs; time spent complying with the Company's customer's requirements; dealing and maintaining my work vehicle; and/or loading or unloading my work vehicle." (Doc. No. 400 at ¶ 60) Named Plaintiff Guice did not sign the Payroll Explanation and Compliance Form, but testified on deposition that when he was interviewed, he was told he would be paid by the unit and shown a rate sheet. Guice also admitted there was a poster in his warehouse titled "Explanation of Piecework and How it is Paid," which provided examples of calculations of technicians' effective hourly rate. (Id. at ¶¶ 28-29)

DirecTV asserts that some MasTec Plaintiffs[11] signed a "Working Time Policy," which provided technicians with specific guidelines that define "working time" as it pertains to a technician's typical workday, and specifically included the performance of warehouse activities

---

[10] These Plaintiffs are: Nicholas Ambroso, Kevin Barkow, Jason Bates, Carlos Beltre-Perez, Jesse Berwald, Daniel Blankenship, Jimmy Boone, Wyatt Bryant, Andrew Chambers, James Coulthurst, David Crawford, Shawn Davis, Steve Dickson, Michael Erickson, Joseph Faerber, Cyus Fattah, George Ferreira, Patrick Gorman, Shane Harris, Benjamin Haynes, Shawn Henning, Michael Hester, Richard Hicks, Danny Hill, Justin Holman, Edward Houston, Aaron Hunt, James Jacobsen, Gene John, Jared Kegley, Robert Landrum, Zachary Lauderman, June Leftwich, Keith Leitzinger, John Lindsay, Michael Logeman, Confesor Maldonado, Corey Marsh, Adam Mata, Daniel McDonald, Chad Medukas, Ruddy Mena, Stuart Meulpolder, Richard Mueller, David Newhouse, Oluwaseun Ogunwunmi, Peter Orbidan, Joshua Pillsbury, Anthony Powell, Kenneth Press, Christopher Ragland, Tyrone Rasmusson, Paul Reints, Clifton Rice, Mario Romero, Lonny Sampson, Jean Sanchez, Christopher Schlieder, David Schmalzer, Steven Scott, Kenneth Scull, David Seaman, Andrew Sinclair, Steve Sluder, Barrington Thompson, Paul Tirebuck, Brian Tuhowski, Larry Van Vleet, Frank Velazquez, Brandon Watson, Deborah Wiggins, and Atoy Williams.

[11] Robert Ellendorf, Bryan Campell, Byron Jackson, Pa Jallow and Tony Middlesworth (see Doc. No. 338 at ¶¶ 65-66).

and office work; training; travel time between jobs; and attending company meetings. (Doc. No. 401 at ¶ 67) In addition, it is undisputed that five MasTec Plaintiffs[12] acknowledged receiving copies of MasTec's "Compensation & Performance Management Guide" (Doc. No. 401 at ¶ 49), which described how technicians' pay was calculated and included a copy of a rate card and example for a work order with an explanation of how to read a work order to determine the pay for completing that work order (id. at ¶¶ 41-47).

Plaintiffs Arnold and Feger testified they knew their positions at AeroSat would be paid by the piece or job before they were hired. (Doc. No. 403 at ¶¶ 23-24)

Upon review of the record, the Court notes that none of the signed agreements or acknowledgements relied upon by DirecTV explicitly state that nonproductive work hours were intended to be covered by piece-rate pay. Moreover, Plaintiffs' deposition testimony is inconsistent on this point. Mertens testified on deposition that she was not paid for time spent in meetings, performing inventory, driving between jobs, calling customers, completing paperwork, and organizing her company-provided van. (Doc. No. 388 at ¶ 71) Arnold testified he was only paid for time spent at a customer's house and was not paid for several tasks he was required to do when not at the customer's home including calling customers, cleaning and organizing his work vehicle, and driving between jobs. Likewise, Feger denied that his piece rate pay was intended to pay for nonproductive work as well as the productive work that had piece-rates assigned to them. (Doc. No. 403 at ¶ 34) Parr testified he did not recall the pay system being explained to him during training. (Id. at ¶ 30) Ellendorf recounted how he was required to wait at a customer's house and not being paid to wait for them to get there. (Id. at ¶ 29)

---

[12] Those Plaintiffs are Joshua Corona, Christopher Foster, Byron Jackson, Pa Jallow and Michael Scott (Doc. No. 401 at ¶ 49).

The parties have presented conflicting evidence as to whether the piece rate system was intended to compensate Plaintiffs for the "nonproductive" tasks they claim it did not cover. Thus, on the record before it, the Court cannot conclude as a matter of law that DirecTV (and its HSPs) properly calculated Plaintiffs' overtime premiums. Accordingly, summary judgment will be denied on this issue. See, e.g., Olivo v. Crawford Chevrolet, Inc., 799 F. Supp. 2d 1237, 1241 (D. N.M. 2011) (genuine issue of material fact existed as to whether car dealership paid auto painter and body man for waiting time between assignments, precluding summary judgment in their action alleging violations of the FLSA); Cook v. Carestar, Inc., No. 2:11-CV-00691, 2013 WL 5477148, *11 (S.D. Ohio Sept. 16, 2013) (where regulations provided that divisor for purposes of calculating regular rate of pay was "the total hours for which the payment is made" a dispute of material fact existed regarding the number of hours per week employees were aware they would be working and "[t]his number, to be determined by a factfinder [would] serve as the divisor for purposes of determining the Plaintiffs' 'regular rate.'").

**B. Straight time or "gap-time" claims**

Plaintiffs claim entitlement to compensation for their alleged unpaid non-productive straight time in weeks they worked overtime (TAC at ¶ 49). DirecTV argues this claim fails as a matter of law because there is no right to recover straight time pay under the FLSA, citing 29 U.S.C.§ 215[13] and Lundy v. Catholic Health System of Long Island, Inc., 711 F.3d 106, 116 (2d Cir. 2013) ("So long as an employee is being paid the minimum wage or more, [the] FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also

---

[13] Section 215 of the FLSA lists "prohibited acts" as being a violation of § 206 (minimum wage provision), § 207 (maximum hours provision), § 212 (child labor provision), § 211(c) (record keeping requirements) or regulations issued under § 214 (records requirement for employment of apprentices and those whose earning capacity is impaired by certain characteristics). It does not include a violation for failure to pay straight or gap time wages.

works overtime hours the same week.") (internal citations omitted). The Eighth Circuit has not addressed whether any gap time claim may be asserted under the FLSA and, as discussed below, courts that have considered the issue have reached varying conclusions.

Plaintiffs rely on a Fourth Circuit decision, Monahan v. Cnty. of Chesterfield, Va., 95 F.3d 1263 (4th Cir. 1996), to support their argument that unpaid straight time in a week where overtime is worked is recoverable under the FLSA. The court in Monahan cited "interpretive guidance" provided by the DOL which state that "extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid." Id. at 1280.

The Second Circuit in Lundy disagreed with Monahan and concluded that the FLSA provides no remedy for gap time claims, even when an employee claims overtime. The court stated that the "the text of the FLSA requires only payment of minimum wages and overtime wages. It simply does not consider or afford a recovery for gap-time hours." The Lundy court was also critical of the DOL's interpretative regulations, including § 778.315, noting that the "interpretive guidance" does not carry the weight of a regulation and the "[DOL] provides no statutory support or reasoned explanation for this interpretation." 711 F.3d at 117.[14]

In Espenscheid, the court agreed with Lundy that the FLSA only requires payment of minimum wages and overtime wages. 2011 WL 10069108, at *12. The court also concluded that § 778.315 should not be interpreted as meaning that an employer has not complied with the maximum hours requirement in the FLSA if it has not paid an employee for all nonovertime

---

[14] The Third Circuit has found the reasoning in Lundy persuasive on the issue of the pleading requirements for a claim under the FLSA. See Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) ("We agree with the middle-ground approach taken by the Court of Appeals for the Second Circuit in Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106 (2d Cir. 2013).").

hours. "An employer's failure to pay for nonovertime hours does not diminish an employee's *overtime* compensation. Rather, it diminishes the employee's *overall* compensation, but there is no language in the FLSA creating a cause of action for diminished overall compensation." Id. (emphasis in the original) (citing United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 494 (2d Cir. 1960) (pay plan "does not become illegal merely because it takes the form of additional hours worked without compensation, rather than of an express reduction of the hourly rate").

Most recently, in Murphy v. First Student Management LLC, No. 1:16-CV-01966-DAP, 2017 WL 346977 (N.D. Ohio Jan. 24, 2017), the court, relying on Espenscheid, dismissed a claim for gap time as not cognizable under the FLSA, explaining that 29 U.S.C. §§ 206 and 207 clearly provide protection for "minimum wage" and "maximum hours," respectively, but not gap time. Id. at *4. Finding the meaning of the statute clear and unambiguous, the Murphy court did not accord any weight to the DOL's interpretation. Id. The court did note, however, that employees can still pursue gap time claims under state law or general contract principles.

Because there is no support in the text of the FLSA or from the Eighth Circuit for Plaintiffs' claims for straight-time compensation for nonproductive work, the claim fails as a matter of law and summary judgment in DirecTV's favor will be granted on those claims. See Terrell v. First Student Management LLC, No. 4:16-cv-481 SNLJ, 2016 WL 6679847, at *3 (E.D. Mo. Nov. 14, 2016).

### C. FLSA exemption for retail or service establishment

Alternatively, DirecTV argues it is entitled to summary judgment on the grounds that Plaintiffs are exempt from overtime under 29 U.S.C. §§ 207(i), the retail or service establishment exemption. Section 207(i) provides:

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

Three elements are necessary to satisfy the requirements of a 7(i) defense: (1) the employer is a "retail or service establishment;" (2) the employees' regular rate of pay is at least one and one-half times the minimum wage; and (3) more than half the employee's compensation for the representative period represents commissions. See Reich v. Delcorp, Inc., 3 F.3d 1181, 1182 (8th Cir. 1993). As the alleged employer, DirecTV bears the burden of proving the exemption by a preponderance of evidence. Matrai v. DirecTV, LLC, 168 F. Supp. 3d 1347, 1358 (D. Kan. 2016) (internal citation omitted). Moreover, exemptions under the FLSA are narrowly construed against the employer seeking to assert them. Beauford v. ActionLink, LLC, 781 F.3d 396, 401 (8th Cir. 2015); Spinden v. GS Roofing Prods. Co., 94 F.3d 421, 426 (8th Cir. 1996); Childress v. Ozark Delivery of Missouri LLC, 95 F. Supp. 3d 1130, 1134 (W.D. Mo. 2015).

### 1. Retail or Service Establishment

The Eighth Circuit defines a "retail or service establishment" as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." Reich, 3 F.3d at 1183. A retail or service establishment "sells goods or services to the general public," "serves the everyday needs of the community in which it is located," "performs a function in the business organization of the Nation which is at the very end of the stream of distribution," and "provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living." 29 C.F.R. § 779.318(a).

In order to be recognized as retail, the establishment must be part of an industry in which there is a "retail concept," and must be recognized as retail in that particular industry. Johnson v. Wave Comm GR LLC, 4 F. Supp. 3d 423, 436 (N.D.N.Y. 2014) (citing Kelly v. A1 Technology, No. 09 Civ. 962 (LAK) (MHD), 2010 WL 1541585, at *11 (S.D. N.Y. Apr. 12, 2010)); 29 C.F.R. §§ 779.316, .322. Some businesses, such as insurance companies, accounting firms, and advertising agencies, clearly lack a retail concept. Johnson, 4 F. Supp.3d at 437 (citing §§ 779.316, .317). Although cable installation and repair establishments are not identified in the regulations, § 779.320 provides a partial list of establishments whose sales or service may be recognized as retail, including repair establishments such as refrigerator service and repair shops, piano tuning establishments, shoe repair shops, automobile repair shops, and watch, clock and jewelry repair shops. Id. at 436.

DirecTV cites numerous cases in which courts have concluded that cable companies are "retail or service establishments" under the 7(i) exemption. See, e.g., Alvarado v. Corporate Cleaning Services, 782 F.3d 365 (7th Cir. 2015); Jones v. Tucker Communications, Inc., No. 5:11-CV-398 (MTT), 2013 WL 6072966, at *7-10 (M.D. Ga. Nov. 18, 2013); Moore v. Advanced Cable Contractors, Inc., No. 1:12-CV-00115-RWS, 2013 WL 3991966 (N.D. Ga. Aug. 1, 2013); Owopetu v. Nationwide CATV Auditing Servs., Inc., No. 5:10-cv-18, 2011 WL 4433159 (D. Vt. Sept. 21, 2011); Horn v. Digital Cable & Commc'ns, Inc., No. 1:06CV325, 2009 WL 4042407 (N.D. Ohio Feb. 11, 2009); Gruchy v. DirectTech Del., Inc., No. 08-10755-GAO, 2010 WL 3835007 (D. Mass Sept. 30, 2010).

Most recently, in Roeder v. DirecTV, No. C14-4091-LTS, 2017 WL 151401 (N.D. Iowa, Jan. 13, 2017), the court concluded that DirecTV is a "retail and service establishment" based on the undisputed fact that the goods and services provided by DirecTV are not for resale because

they are provided to end user customers in their homes. <u>Id</u>. at *29. The <u>Roeder</u> court also relied on the reasoning of those cases concluding that cable installers (i.e., contracting companies) have a retail concept. <u>Id</u>. (citing cases). "These cases focus on whether the establishment 'sells goods or services to the general public' and 'serves the everyday needs of the community in which it is located.' If this definition applies to the contracting companies, then it certainly applies to the cable provider that supplies the ultimate product being purchased." <u>Id</u>. (citing § 779.318(a)). As to whether DirecTV's business is recognized as "retail" in the industry, the <u>Roeder</u> court found a declaration submitted by DirecTV from the Deputy Executive Director of the Satellite Broadcast and Communications Association, a national trade organization, sufficient to establish this prong. <u>Id</u>. The Court notes this is the same declaration submitted on the record herein.

Similarly, in <u>Matrai</u>, 168 F. Supp.3d 1347, the court concluded that DirecTV was a "retail or service establishment" within the meaning of the FLSA based on the following facts: DirecTV sells an everyday service delivered through sophisticated equipment installed in the retail consumers' homes; DirecTV sells its services to the ultimate customers, and the equipment is installed and serviced in the customers' homes, which they do not resell; plaintiffs were completing work orders for the installation of satellite television equipment purchased in a retail transaction; consumers had purchased installation services as part of a retail package of equipment and services; and plaintiffs were providing installation and repair services in connection with a retail product for the comfort, convenience and enjoyment of the retail purchasers. <u>Id</u>. at 1359-62. Noting several cases discussing and assuming that cable television providers were retail in nature, the <u>Matrai</u> court likewise concluded that DirecTV has a retail concept. "The provision of satellite television services and the installation and repair of the same 'meet the everyday needs of the community.'" <u>Id</u>. at 1361-62 (quoting <u>Jones, </u>2013 WL

6072966). The court further found no material dispute that the installation and repair of satellite equipment in consumers' homes is recognized as retail in the satellite television industry. Id. at 1362.

Based on virtually identical facts, the Court is satisfied that DirecTV meets the "retail or service establishment" prong of the 7(i) exemption as it has been understood and applied in the cases cited above. DirecTV sells digital television programming to end user customers in their homes that are not for resale, and its primary source of revenue comes from subscription fees. (See Doc. Nos. 399, 400, 427, 428, 429 at ¶¶ 1-2; Doc. No. 432 at ¶¶ 4, 5) The Court is also satisfied that DirecTV, as a provider of consumer satellite services and equipment, has a retail concept. See Matrai, 168 F. Supp.3d at 1362. Lastly, based on the testimony of Steven Hill, Deputy Executive Vice President of the Satellite Broadcast and Communications Association, the Court acknowledges that DirecTV's business is recognized as retail in the cable and satellite television industry. Hill states:

> Sales and services that are generally recognized as "retail" in our industry include the retail sales of satellite service and equipment by the satellite company (here, DIRECTV) to consumers through retail outlets (*i.e.*, online, telephonic call center facilities, or brick and mortar locations), and the services performed by technicians to fulfill the retail transaction between the Satellite Service and the Consumer by delivering, installing, or servicing the equipment purchased or leased by the customer, and activating or maintaining the customer's connection to the satellite company's satellite television service.

(See Doc. No. 317-9 at ¶ 4; Doc. No. 324-2 at ¶ 4; Doc. No. 331-2 at ¶ 4; Doc. No. 338-10 at ¶ 4; Doc. No. 356-8 at ¶ 4) Plaintiffs controvert this with the testimony of Dan Yannantuono, Chief Executive Officer of DirectSat, who testified that he did not consider the services performed by technicians to be retail in nature and that he had never referred to his business as being retail, and J. Mitchell Clarke, Executive Vice President of Multiband, who testified that he did not consider

Multiband to be a retail business. (See Doc. Nos. 399 at ¶ 3; Doc. No. 400 at ¶ 5; Doc. No. 427 at ¶ 4; Doc. No. 428 at ¶ 3; Doc. No. 429 at ¶ 3; see also Doc. No. 404 at ¶¶ 21-24). The Roeder court found this testimony insufficient to raise a genuine issue of material fact since the executives were only asked about their businesses and not DirecTV's business. 2017 WL 151401, at *29. For these reasons, the Court finds and concludes that DirecTV is a "retail and service establishment" for purposes of the 7(i) exemption.

**2. Regular rate of pay equal to or exceeding one and one-half times the minimum wage**

To satisfy the second prong of the 7(i) exemption, DirecTV submits the payroll records of the Plaintiffs against whom it is moving for summary judgment to demonstrate that their pay exceeded one and one-half times the applicable minimum wage. With respect to the DirecTV Home Services Plaintiffs, DirecTV asserts that the federal minimum wage was $7.25 per hour during the applicable time period. Thus, for each pay period in which Plaintiffs' regular rate of pay exceeded $10.88, the requirements of the 7(i) exemption are satisfied. It is undisputed that the site minimums at each of the locations where Plaintiffs worked were no lower than $12.50 per hour during the applicable time period, meaning that on average in each week, each DirecTV Home Services Plaintiff earned at least $12.50 per hour.[15]

With respect to DirectSat representative Guice, there is no payroll period after September 1, 2009 in which his regular rate of pay was less than $10.88 per hour (federal minimum wage was $7.25) (Doc. No. 400 at ¶ 46). As for AeroSat, both Arnold and Feger only worked one week where their regular rate was less than $9.825 (the applicable minimum wage at that time

---

[15] Plaintiff does not dispute that Plaintiffs' regular rate would not fall below $12.50 for each hour recorded, but takes exception to the statement to the extent it suggests Plaintiffs were always paid on an hourly basis (Doc. No. 399 at ¶ 34).

was $6.55), and in those weeks, neither worked more than 40 hours (Doc. No. 427 at ¶¶ 45-50). Multiband representative Parr's pay records reflect that he earned a regular rate of pay of more than $10.88 per hour for each pay period in which he recorded overtime from October 22, 2009, through his separation from employment at Multiband on June 14, 2011 (during this time the federal minimum wage was $7.25) (Doc. No. 428 at ¶ 59, 76).[16] MasTec representative Ellendorf's pay records reflect that his regular rate of pay exceeded $10.88 per hour for every pay period in which he recorded overtime (federal minimum wage at that time was $7.25) (Doc. No. 429 at ¶ 32).

Plaintiffs respond that except for the DirecTV Home Services subclass, DirecTV has not provided an analysis of the payroll records demonstrating that this element is satisfied. (Doc. No. 403 at 52) In reply, DirecTV argues this is immaterial because it did not move for summary judgment as to all Plaintiffs, and that with respect to those Plaintiffs against whom it moved for summary judgment, there is no dispute that those Plaintiffs' pay exceeded one and one-half times the applicable minimum wage. (Doc. No. 431 at 47)

As discussed above, the evidence of record is insufficient to determine whether the number of hours Plaintiffs worked equaled the number of hours for which they were paid under DirecTV's piece rate system. In any given week, the number of hours actually worked could have been greater than the number of hours for which Plaintiffs were paid. Without knowing the regular rate of pay, the Court cannot conclude whether it is in fact greater than one and one half times the applicable minimum wage. Thus, remaining factual inquiries preclude the legal

---

[16] Plaintiffs do not dispute that Parr's regular rate of pay was not less than $10.88 per hour for weeks he recorded overtime, but argues the statement is incomplete to the extent it suggests Parr was paid for all of his overtime in those weeks (Doc. No. 402 at ¶ 59).

determination of whether the 7(i) element of the overtime payment exception is satisfied. See Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1257 (11th Cir. 2001).

### 3. Commissions

With respect to the third prong of the retail or service establishment exemption, DirecTV asserts that the piece rate or production payments received by Plaintiffs qualify as commissions. Neither the FLSA nor DOL regulations define the term "commission" as it is used in 7(i). However, when concluding that a commission-based scheme exists, courts have generally found the following three components present: "(1) the employee's compensation must be tied to customer demand or the quantity of sales; (2) the compensation plan must provide performance-based incentives for the employee to increase his or her income; and (3) there must be proportionality between the value of the goods or services sold and the rate paid to the employee." Johnson, 4 F. Supp. 3d at 442 (citing Owopetu v. Nationwide CATV Auditing Services, Inc., No. 5:10-CV-18, 2011 WL 883703, at *4 (D. Vt. Mar. 11, 2011)).

Relying on Klinedinst, 260 F.3d 1251 and Alvarado v. Corporate Cleaning Servs., 782 F.3d 365 (7th Cir. 2015), DirecTV argues that Plaintiffs received commission-based payment. In Alvarado, window washers were paid per job on a point system based on the job's complexity and the estimated number of hours it would take to complete it. 782 F.3d at 366-67. Workers were then paid by the number of points allocated to them multiplied by a rate specific to each worker. Id. The points assigned to the job also affected the prices charged the customer Id. at 367. In concluding this was a commission, the Alvarado court emphasized that the window washers were paid only if there had been a sale of window-washing service to a building owner or manager as well as the irregular work hours. Id. at 368.

In Klinedinst, car painters were paid based on a predetermined number of "flag hours" multiplied by an hourly rate. While these "flag hours" were based on time estimates, employees received the same amount of compensation regardless of the actual time it took to complete the jobs. 260 F.3d at 1254. The court held that this flat rate payment system constituted commission-based payment because it "(1) provides workers with an incentive to work quickly, while (2) paying them at a rate that exceeds minimum wage." Id. at 1256.

Here, DirecTV points to the facts that the technicians were paid based on the number and type of tasks they performed each week. They were paid a predetermined amount per task, and the amount paid varied based on the type of task. Technicians received the same amount of production pay for completion of each task regardless of the amount of time it took to complete it. Unlike piece workers, technicians only had work orders to perform if a customer first ordered DirecTV service. Technicians had the opportunity to pick up additional jobs during the day if they completed their work quickly. In addition, technicians could sell DirecTV's protection plan directly to the customer, and "upsell" additional receivers or other products. DirecTV notes that technician's work hours varied daily and weekly depending upon the work orders they completed and seasonal fluctuations.

DirecTV argues that other courts have considered compensation arrangements similar to its plan and found they comport with the FLSA, citing Tucker Commc'ns, 2013 WL 6072966, at *10-11, and Moore, 2013 WL 3991966, at *4-5. In both of these cases, the courts emphasized that the payment systems at issue were incentive-based; the technicians were paid a set amount per task, so the length of time they took to complete jobs did not determine their compensation. In addition, it was clear that the technicians had the opportunity to pick up additional jobs during the day.

Plaintiffs respond that a commission-based system requires some proportionality between employee compensation and the amount charged to the customer, citing Wilks v. Pep Boys, 278 Fed. Appx. 488, 489 (6th Cir. 2008), Novak v. Mitchell's Motors, Inc., No. 9 C 5748, 2011 WL 109083 (N.D. Ill. Jan. 12, 2011), and Parker v. Nutri System, Inc., 620 F.3d 274, 283 (3rd Cir. 2010). Plaintiffs argue that DirecTV has failed to show technicians were paid a portion of what customers were charged for their services. In particular, DirecTV installations are free to the customer. Thus, the amount paid to technicians for installing DirecTV systems is not proportional to what customers pay. Indeed, the testimony from DirecTV and its HSPs was that the piece rates paid to technicians were set "strategically" after taking into account how long they thought it would take to complete the task. Further, Plaintiffs dispute that technicians were assigned a job only after a customer makes a purchase; technicians performed service calls and upgrades, both of which could be unrelated to a customer purchase. Plaintiffs also dispute their pay was incentive-based. They testified they rarely received additional jobs at the end of the day and more often were told to either go home or assist another technician.

In reply, DirecTV argues that installation is not the only aspect of the retail transaction; installation, service, or upgrade of the DirecTV system is part of the service it provides its customers and for which customers pay a monthly subscription fee. DirecTV further argues the FLSA does not always require proportionality, citing Alvarado, 782 F.3d at 367-68 (holding that a commission pay system is not invalidated if the sale price attributable to commissioned-employee's work varies from job to job, and that "[a] more important consideration is that commission-compensated work involves irregular hours of work"). Even if some degree of proportionality is required, DirecTV contends that requirement is satisfied when technicians are paid more for installing additional receivers.

These arguments were considered and rejected in <u>Roeder</u>, 2017 WL 151401. There, the court found DirecTV failed to show that more than half of the plaintiffs' compensation was based on commissions. Plaintiffs had no involvement in the sales aspect through which DirecTV work orders were generated, and while they were paid the same amount for a job regardless of how quickly they completed the work, there was no evidence that this incentivized Plaintiffs to work efficiently so that they could receive additional work orders and earn more. The <u>Roeder</u> court also found insufficient evidence of any proportionality between the prices paid by DirecTV customers and the compensation paid to plaintiffs. "DirecTV has not pointed to anything in this record demonstrating plaintiffs' compensation was related in any way to the price paid by the customer. The fact that plaintiffs were paid more for a work order that included additional receivers says nothing about the charges passed on to the customer. Indeed, DirecTV has not offered any evidence regarding how customers were charged for specific services performed by plaintiffs." <u>Id</u>. at *30. Likewise here, the Court finds DirecTV has not met its burden of establishing that more than half of Plaintiffs' pay was commissions.

In sum, the Court finds and concludes that DirecTV has not established, as a matter of law, all three prongs required to establish a 7(i) exemption. Accordingly, DirecTV's motions for summary judgment will be denied on this issue.[17] <u>Cf</u>. <u>Perez v. Lantern Light Corp.</u>, No. C12-01406 RSM, 2015 WL 3451268, at *18 (W.D. Wash. May 29, 2015), where the court concluded

---

[17] Plaintiffs argue that neither DirecTV nor the HSPs have provided evidence of compliance with certain reporting requirements of the retail service exemption, and in particular, 29 C.F.R. § 516.16, which requires an employer to produce "[a] symbol, letter or other notation placed on the payroll records identifying each employee who is paid pursuant to [the retail sales exemption] and to maintain an agreement or memorandum of understanding summarizing the terms of the commission pay system." (Doc. No. 403 at 57) At this point in the litigation, the Court makes no findings with respect to whether DirecTV violated the DOL's reporting requirements. Rather, the Court finds only that such a failure, even if proven by the Plaintiffs, would not result in a denial of summary judgment if the Plaintiffs qualify for the retail service exemption in all other respects. <u>See</u> <u>Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.</u>, 246 F. Supp. 2d 886, 900 (S.D. Ohio 2003).

that numerous disputes of material fact existed under all three prongs necessary to establish the elements of a 7(i) defense and denied DirecTV's motion for partial summary judgment.

**D**. **Employee Commuting Flexibility Act**

DirecTV argues that summary judgment should be granted with respect to any time spent by Plaintiffs in the FLSA subclasses performing tasks incidental to their use of their HSP-provided vehicles for commuting under the Employee Commuting Flexibility Act (ECFA), 29 U.S.C. § 254(a). Under the ECFA, time spent by employees on activities that are "incidental" to the use of an employer's vehicle for commuting are not compensable if the use of the vehicle is the subject of an agreement between the employer and the employee, and the vehicle is used for travel within the normal commuting area for the employer's business. See Chambers v. Sears Roebuck and Co., 428 Fed. Appx. 400, 410-21 (5th Cir. 2011). DirecTV argues that time spent by technicians reviewing work schedules, calling customers, and organizing and maintaining work vehicles is not compensable time under the ECFA.

Plaintiffs respond that DirecTV submits no facts on the record to support their claim that these tasks were incidental to Plaintiffs' commute. In contrast, Plaintiffs assert that DirecTV required them to perform certain activities before arriving at their first job of the day, including calling morning installation appointments by 8:30 a.m., reviewing daily installation schedules, listing fields on activity detail screens, reviewing and accounting for installation equipment needs, and mapping customer addresses, and that activities performed as part of the regular work of the employees in the ordinary course of business should be counted and paid. (Doc. No. 363 at ¶¶ 45-46)

Whether tasks are "incidental" to the use of a vehicle or "integral" to the regular work of the employee in the ordinary course of business is a question of fact. See Valladon v. City of

Oakland, No. C 06-07478 SI, 2009 WL 2591346, at *5 (N.D. Cal. Aug. 21, 2009) (whether time spent cleaning and maintaining vehicles was compensable could not be decided on summary judgment because of disputed facts regarding whether officers were required to maintain clean vehicles); Monterrey v. Miguel Lopez Jr., Inc., No. 12-24183-CIV, 2014 WL 657677, at *4 (S.D. Fla. Feb. 20, 2014) (genuine issue of material facts existed as to whether time spent loading truck was integral or de minimis). Accordingly, summary judgment will be denied on this issue.

### E. Proof of damages

Relying on Holaway, 771 F.3d 1057, DirecTV argues that Plaintiffs have failed to carry their burden of showing the amount and extent of their unpaid work because they have not disclosed their damages pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii). In Holoway, a salaried employee sued his employer under the FLSA, claiming he was due overtime compensation because he consistently worked sixty-two to seventy hours per week, as opposed to the standard forty. The district court entered summary judgment in the employer's favor, and the Eighth Circuit affirmed, because the employee had failed to meet his burden "to come forward with sufficient evidence to show the amount and extent of overtime work which would allow a fact-finder to find overtime hours as a matter of just and reasonable inference." Id. at 1060.

Although the FLSA requires employers to pay overtime compensation to its employees at a rate of time and a half, "[a]n employee who sues for unpaid overtime has the burden of proving that he performed work for which he was not properly compensated." Id. at 1059 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 881 (8th Cir. 2011)). The FLSA also requires employers to maintain wage and hour records; however, if the employer's records do not specifically account for all hours

worked, an employee may still recover under the FLSA even if the employee "cannot prove the precise extent of the uncompensated work." Id. (citing Dole v. Tony & Susan Alamo Found., 915 F.2d 349, 351 (8th Cir. 1990)). "Rather, employees are to be awarded compensation based on the most accurate basis possible." Id. Where an employee has shown the amount and extent of work for which he was not properly compensated "as a matter of just and reasonable inference," then the burden shifts to the employer to present evidence of the amount of work performed, or of the negative inference to be drawn from the employee's estimate. Id. at 1059 (citing Carmody, 713 F.3d at 406). If the employer fails to meet this shifted burden, then damages to the employee are proper. Anderson, 328 U.S. at 686-87.

Relying on the relaxed evidentiary standard of Anderson, Plaintiffs respond that their burden to prove a violation of the FLSA is separate and distinct from their burden to prove the amount or extent of their unpaid work. Plaintiffs assert they have produced evidence that they worked overtime and performed a variety of work tasks that were not compensated, and that the report of their damages expert, L. Scott Baggett, PhD., provides a reasonable estimate of the time spent on nonproductive tasks sufficient to satisfy their burden. (See Doc. No. 385-3)[18]

The contradictory evidence introduced by both sides clearly shows that both the amount of time Plaintiffs worked and the rate at which they were compensated are disputed material facts. The Court finds there is sufficient evidence of record that, if credited, could lead a jury to conclude that Plaintiffs did suffer damages as a result of DirecTV's alleged overtime violations. DirecTV will have the opportunity at trial to cross-examine Plaintiffs on their estimates, point out inconsistencies and argue why those estimates are insufficient. At this stage, however,

---

[18] DirecTV has moved to preclude the report and testimony of Plaintiffs' damages expert, L. Scott Baggett, PhD., which will be addressed in a separate order. (Doc. No. 313)

Plaintiffs' evidence is sufficient to survive summary judgment. See <u>Roeder</u>, 2017 WL 151401, at *34.

### F. Statute of limitations

The FLSA requires that a civil enforcement action be brought within two years after the cause of action accrued, except that a cause of action arising out of a "willful" violation may be commenced within three years. 29 U.S.C. § 255(a). A "willful" violation is one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." <u>Jarrett v. ERC Properties, Inc.</u>, 211 F.3d 1078, 1082 (8th Cir. 2000) (quoting <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)).

Relying on <u>Chesley v. DirecTV, Inc.</u>, No. 14-CV-468-PB, 2015 WL 3549129 (D.N.H. June 8, 2015), DirecTV moves for summary judgment on the claims of a number of individual Plaintiffs on the grounds that they did not perform work within two years plus 150 days of filing their consents to join and are thus outside the FLSA's two-year statute of limitations (Doc. No. 316 at 30; Doc. No. 330 at 31; Doc. No. 337 at 29; Doc. No. 358 at 36-37).[19] In response, Plaintiffs argue that the FLSA's three-year limitations period applies because DirecTV acted willfully. Plaintiffs point to DirecTV's history of litigation involving alleged FLSA violations, and its "fissured employment" scheme, as evidence of willfulness (Doc. No. 403 at 66-70).

In <u>Chesley</u>, the court granted DirecTV and Multiband's motion to dismiss the claims of two plaintiffs based on the FLSA's two-year statute of limitations. The plaintiffs argued the Act's three-year limitations period applied because the defendants acted willfully. The plaintiffs' only allegation of willfulness was that the defendants' adoption of a "fissured employment" scheme was an attempt to avoid the FLSA. <u>Id.</u> at *7. The court noted that a fissured employment

---

[19] DirecTV also contends that with respect to the remaining Plaintiffs' claims, summary judgment is proper as to their claims for time more than 880 days (two years plus 150 days of tolling) prior to filing their consent to join forms. (Doc. No. 330 at 31-32; Doc. No. 337 at 29; Doc. No. 358 at 38)

scheme is not per se illegal under the FLSA, and stated that "[a]t most, the allegation shows that the defendants were aware of the FLSA and attempted to align their conduct in a manner that was cost-effective for them while not violating the FLSA. Such circumstances do not rise to the level of willfulness." Id.

Whether a violation is willful is a question of fact. Koenig v. Bourdeau Const. LLC, No. 4:13CV00477 SNLJ, 2013 WL 5876712, at *3 (E.D. Mo. Oct. 31, 2013) (citing cases). Giving Plaintiffs the benefit of all reasonable factual inferences, the Court cannot conclude as a matter of law that the relevant statute of limitations should be only two years instead of three. Thus, DirecTV cannot establish that these Plaintiffs have no possible claim and summary judgment is inappropriate.

### G. Subclass specific arguments

In addition to the arguments advanced regarding the subclasses as a whole, DirecTV moves for dismissal of the claims of individual Plaintiffs who fail to fit within the subclass definitions or who have abandoned their claims.

### a. DirecTV Home Services

DirecTV asserts that because it has no record of Rafael Madrigal working as a W-2 employee for DirecTV Home Services, his claims must be dismissed (Doc. No. 317 at ¶ 85). According to Plaintiffs, in his response to the parties' discovery questionnaire, Madrigal indicated that he worked for both Multiband and DirecTV Home Services. After being informed that DirecTV had no record of Madrigal working for DirecTV Home Services, Plaintiffs stipulated to his dismissal from the DirecTV Home Services subclass, but not the Multiband subclass. (Doc. No. 399 at ¶ 85) Because DirecTV has not established that Madrigal has no possible claim within the Multiband subclass, summary judgment is inappropriate.

DirecTV Services Plaintiff Robert Barnes filed his consent to join this lawsuit on March 7, 2013 (Doc. No. 317 at ¶ 77). Because it is undisputed that Barnes did not receive overtime premiums within three (3) years and 150 days of March 7, 2013 (Doc. No. 399 at ¶ 78), his claim will be dismissed.

Fifteen DirecTV Home Services Plaintiffs[20] received a settlement payment in a FLSA collective action brought against DirecTV in the United States District Court for the Central District of California styled <u>Cicero, et al. v. DIRECTV, Inc. d/b/a DIRECTV Home Services</u>, Case No. 07-1182-AC. In exchange for their settlement payments, these Plaintiffs released DirecTV from, and agreed not to sue or otherwise make a claim against DirecTV for violation of the FLSA through the effective date of the Settlement Agreement, i.e., August 27, 2010 (Doc. No. 317 at ¶¶ 86-89; Doc. No. 399 at ¶ 90). Because DirecTV is not seeking to dismiss these Plaintiffs' claims entirely but rather, to limit the amount of time for which they may recover unpaid overtime, the Court finds these arguments are more appropriate if and when the parties have to calculate damages, rather than at this stage when the parties are seeking to narrow liability issues. The Court will therefore, deny summary judgment as to certain portions of these claims. <u>See</u> <u>Espenscheid</u>, 2011 WL 10069108, at *16.

**b. MasTec**

Plaintiff Miguel Almendares filed his consent to join this lawsuit on February 19, 2013 (Doc. No. 338 at ¶ 105); Plaintiff Emil Dimitrov filed his consent to join this lawsuit on March 12, 2013 (<u>id</u>. at ¶ 107). Almendares and Dimitrov did not receive piece rate pay within two years and 150 days of the date their consents to join this litigation were filed (<u>id</u>. at ¶¶ 106, 108). While Plaintiffs do not dispute this, they assert that Mastec payroll records show they received piece

---

[20] Norman Ahlberg, Robert Davis, Martin Gomez, Brien Herdzik, Zackery Lange, Dale Martinez, John Milleman, Andrew Raygoza, Paul Romera, Steve Sherry, Cole Snider, Christopher Stanfill, Terry Teague, William Urich and Paul Valencia (Doc. No. 399 at ¶ 90).

rate pay within three years and 150 days prior to the filing of their consents to join (Doc. No. 401 at ¶¶ 106, 108) Because there remains an issue regarding willfulness and the limitations period, summary judgment as to these claims is inappropriate.

Plaintiff Christopher Foster filed his consent to join this lawsuit on March 1, 2013 (Doc. No. 338 at ¶ 109); Plaintiff Bobby Jordan, Jr. filed his consent to join this lawsuit on February 20, 2013 (id. at ¶ 111); Plaintiff Phillip Mellon filed his consent to join this lawsuit on February 12, 2013 (id. at ¶ 113). DirecTV states that Foster, Jordan and Mellon did not receive piece rate pay within three years and 150 days of the date their consents to join this litigation were filed (id. at ¶¶ 110, 112, 114). Plaintiffs dispute this with weekly payroll reports/summaries reflecting piece rate pay during the relevant time period (Doc. No. 401 at ¶¶ 110, 112, 114). As discussed above, the Court is unable to conclude as a matter of law that the relevant statute of limitations should be two years instead of three. Thus, DirecTV cannot establish that these Plaintiffs have no possible claim and summary judgment is inappropriate.

### c. Multiband

It is undisputed that Plaintiffs   Lonnie Spicer, Steven Parr, Jacob Jones, Shannon McCavit, and Gavin Common   are not seeking compensation for hours they worked but did not report on their timesheets; they testified on deposition that they did not record on their timesheets the hours for which they allege they were not paid. (Doc. No. 402 at ¶¶ 106-108, 110-113, 176) Thus, DirecTV argues they have abandoned the only claim they testified they had, entitling DirecTV to summary judgment. (Doc. No. 358 at 34) Plaintiffs dispute that none of their alleged unpaid hours were recorded on their timesheets. (See Doc. No. 402 at ¶¶ 110-113) For instance, Spicer testified on deposition that time spent assembling satellite dishes, receiving and reviewing his schedule, and calling customers, as well as some meeting time and warehouse time, would

have been recorded on his timesheets. (Id. at ¶ 109) Because this is disputed fact issue, summary judgment as to these Plaintiffs will be denied.

DirecTV also asserts that Plaintiffs Josias Dasilva, Jr., Eric Greayer, Albert Matthews, Jr., Bruce Smiley, Rodney Weitknecht, Clair McLaughlin II, and Clentin Cox were never paid pursuant to Multiband's piece-rate compensation system and thus their claims should be dismissed. (Doc. No. 356 at ¶¶ 81, 82). Because Plaintiffs do not dispute that Cox, Matthews, Smiley and McLaughlin were not paid piece-rate (Cox was paid on a salaried basis and Matthews, Smiley and McLaughlin were paid hourly), their claims will be dismissed.

Plaintiffs have submitted contradictory evidence that Dasilva and Weitknecht were paid piece-rate, pointing to the payroll register produced by Multiband that reflects that Dasilva was paid piece rate (indicated as "tech work"), and a payroll summary showing Weitknecht was paid piece rate for part of his time working as a technician for Multiband. (See Doc. No. 402 at ¶¶ 81-82) Thus, the Court will deny DirecTV's motion as to Dasilva and Weitknecht because there are genuine disputed issues of fact.

As for Greayer, Plaintiffs dispute that he was paid hourly to the extent his claims were stayed pending arbitration (see Doc. No. 190). Because the Court has since lifted the stay and allowed both the MasTec and Multiband opt-ins to rejoin their respective subclasses in this case (Doc. No. 443), this argument is moot and Greayer's claims will be dismissed.

It is undisputed that Plaintiff Karl Brown was never paid pursuant to the piece-rate compensation system during the limitations period; he was paid piece rate through the pay period covered by his paycheck dated August 5, 2010, and on a salaried basis thereafter. (Doc. No. 402 at ¶ 83) His claim will, therefore, be dismissed.

It is undisputed that Plaintiffs Gregory Cook, David George, Christopher Johnson, and Scott McKellar were paid hourly during at least part of their employment. (Doc. No. 402 at ¶ 84) Cook was paid under the piece-rate system after August 2010; George was paid under the piece-rate system after October 13, 2012; Johnson was paid under the piece-rate system after December 2009; and McKellar was paid under the piece-rate system after November 2009. (Id. at ¶¶ 84-92). Prior to those dates, Plaintiffs Cook, George, Johnson and McKellar were each paid an hourly rate, not pursuant to the piece-rate system. (Id.) DirecTV argues that the claims of Cook, George, Johnson and McKellar should be dismissed to the extent they did not perform any production work within the two-year statutory period. Although undisputed, there remains an issue regarding willfulness and the limitations period, making summary judgment inappropriate.

### d. DirecSat

Because it is undisputed that Plaintiffs Kenneth Achterling III, Bernard Jordan, Stuart Meulpolder, Anthony Powell, Paul Tierbuck, Viktor Tukhlynovychand did not work any overtime within three years and 150 days of the date their consents to join this litigation were filed (Doc. No. 400 at ¶ 150), their claims will be dismissed. The evidence is disputed with regard to David Newhouse, who filed his consent to join on February 27, 2013 (see id. at ¶ 122). Plaintiffs argue that DirectSat's payroll records show that Newhouse received overtime pay during the pay periods ending March 24, 2012 and May 19, 2012 (id. at ¶ 150).

In addition, DirecTV asserts that the following individuals did not work any overtime within two years and 150 days of the date their consents to join were filed: Kevin Barkow, Randy Collier, Erick Collins, Cyrus Fattah, Gene John, Confessor Maldonado, Gary McGee, Juan Carlos Melendez, Joshua Pillsbury, Christopher Ragland, Torry Rufer, Antonio Ruffin, Steven Scott, William Scott, Mandell Taylor, and Todd Witkowski. Although undisputed (see id.

at ¶ 151), there remains an issue regarding willfulness and the limitations period, making summary judgment for DirecTV inappropriate.

Lastly, DirectSat asserts that Plaintiffs Christopher Ragland and Tory Rufer did not receive any production pay within three years and 150 days of the date their consents to join were filed. Because Plaintiffs do not dispute that Rufer did not earn production pay during the limitations period (Doc. No. 400 at ¶ 148), his claim will be dismissed. As for Ragland, who filed his consent to join on February 25, 2013, the relevant date would be September 28, 2009. Plaintiffs argue that according to DirectSat's compensation records, Ragland received production pay between September 28, 2009 and October 27, 2009. (Id.) Because DirecTV has not established that Ragland has no possible claim, summary judgment is inappropriate.

### H. FLSA claims of 64 Multiband plaintiffs must be dismissed under the Labor Management Relations Act (LMRA) because resolution of the claims would necessarily require the court to interpret the CBAs[21]

DirecTV contends that many of the Multiband Plaintiffs were employed pursuant to collective bargaining agreements (CBAs) between their unions – the International Brotherhood of Teamsters, Local 135 (Teamsters) and the International Brotherhood of Electrical Workers, Local 103 (IBEW) – and Multiband, and that all terms and conditions of their employment, including compensation, are governed by those CBAs. As such, DirecTV argues that Plaintiffs' claims necessarily require interpretation of the underlying CBAs, and must therefore be resolved pursuant to the grievance procedures set forth in the CBAs, citing Vadino v. A. Valey Engineers, 903 F.2d 253 (3rd Cir. 1990). In response, Plaintiffs argue that their claim does not turn on the language of the CBA, and is thus unaffected by the LMRA.

---

[21] Of these 64 Plaintiffs, 62 were subject to various CBAs between Multiband and the Teamsters (Doc. No. 356 at ¶ 28), and 2 were subject to various CBAs between Multiband and IBEW (id. at ¶ 30). Plaintiffs dispute that all 64 are subject to CBAs or that the provisions therein regarding the calculation of the regular rate of pay and overtime premiums means that Plaintiffs were paid for all of their overtime. (Doc. No. 402 at ¶¶ 16, 24-25)

In Vadino, the plaintiff was a union worker employed by a heating, ventilation, and air conditioning contractor. Under the operative CBA, a "journeyman" was defined as a mechanic with four years of experience, and an "apprentice" was defined as an individual "engaged in learning the trade of a journeyman." 903 F.2d at 255. The CBA provided that journeymen would be paid more than apprentices. For six years, the plaintiff was paid at a rate higher than the apprentice rate, but lower than that of a journeyman. He subsequently filed a civil action against his employer in federal district court, alleging that the employer should have been paying him at a journeyman's rate. Id. at 255-56. Plaintiff alleged, *inter alia*, that the employer violated the FLSA's overtime provisions, because (1) his "regular rate" for overtime purposes should have been that of a journeyman, and (2) the employer had thus failed to pay him at least time and a half of his "regular rate" for overtime work. Id. at 255, 264. Noting that the plaintiff's FLSA claims were entirely dependent on his assertion that his correct "regular rate" was that of a journeyman, pursuant to the terms of the CBA, the Third Circuit held that if an FLSA claim "depends on the disputed interpretation of a CBA provision, an employee must first go to arbitration ... before vindicating his or her rights in federal court under the FLSA." 903 F.2d at 266. The court in Vadino did not, however, hold that an FLSA claim is automatically "barred" simply because it depends on a disputed term in the CBA. Instead, the Third Circuit applied what is effectively an exhaustion principle, requiring union employees to resolve certain threshold contract disputes through the grievance and arbitration process before pursuing a dependent FLSA claim in federal court. Urbani v. Wellesley Coll., No. 13-CV-11768-ADB, 2016 WL 6571247, at *7 (D. Mass. Jan. 12, 2016).

The Multiband CBA does not reference the subject of nonproductive work or provide an explanation of the piece-rate system. Thus, unlike the FLSA claim in Vadino, Plaintiffs' claim

does not require interpretation of the CBA. <u>See</u> <u>Barrentine v. Arkansas-Best Freight Sys.</u>, 450 U.S. 728, 737 (1981) ("Not all disputes between an employee and his employer are suited for binding resolution in accordance with the procedures established by collective bargaining. While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers."). For this reason, and because of the numerous disputed facts, DirecTV's motion for summary judgment will be denied on this issue.

## IV. Conclusion

With respect to the arguments directed to the subclasses as a whole, summary judgment in DirecTV's favor will be granted on Plaintiffs' claims for straight-time compensation for nonproductive work, as such claims are not cognizable under the FLSA. Given the numerous issues of disputed fact, DirecTV has not established, as a matter of law, that: (1) Plaintiffs' overtime premiums were properly calculated in compliance with the FLSA; (2) Plaintiffs are exempt from overtime under § 207(i); or that (3) Plaintiffs' evidence of damages is insufficient. Accordingly, summary judgment on these issues will be denied.

Moreover, as to the arguments directed to individual Plaintiffs, the Court will resolve those as follows:

The claim of DirecTV Home Services Plaintiff Robert Barnes will be dismissed as time-barred;

The claims of Multiband Plaintiffs Clentin Cox, Albert Matthews, Bruce Smiley, Clair McLaughlin II, and Eric Greayer will be dismissed because it is undisputed that they were never paid pursuant to Multiband's piece-rate pay system;

The claim of Multiband Plaintiff Karl Brown will be dismissed because he was never paid pursuant to Multiband's piece-rate pay system during the limitations period;

The claims of DirectSat Plaintiffs Kenneth Achterling III, Bernard Jordan, Stuart Meulpolder, Anthony Powell, Paul Tierbuck, and Viktor Tukhlynovychand will be dismissed because they did not work any overtime within three years and 150 days of the date their consent to join this litigation were filed; and

The claim of DirectSat Plaintiff Tory Rufer will be dismissed because he did not receive any production pay within three years and 150 days of the date his consent to join this litigation was filed. In all other respects, the motions will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment as to the Claims of DirecTV Home Services Plaintiffs [315], Plaintiffs Jamie Arnold and Clinton Feger [322], the DirectSat Plaintiffs [329], the MasTec Plaintiffs [336], and the Multiband Plaintiffs [355] are **GRANTED in part** and **DENIED in part** in accordance with the rulings herein.


_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**


Dated this 31st day of March, 2017.

.