# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JAMIE ARNOLD, et al., )
)
      Plaintiffs, )
)
      v. )      Case No. 4:10-CV-352-JAR
)
DIRECTV, LLC, et al., )
)
      Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Rule 23 Certification of Missouri State Law Claim (Doc. No. 241) and Defendants' Motions for Decertification as to the DirecTV Home Services Subclass (Doc. No. 319), DirectSat Subclass (Doc. No. 326), Mastec Subclass (Doc. No. 333), and Multiband Subclass (Doc. No. 352). The motions have been extensively briefed and are ready for disposition.[1]

**Background**

As set out in the Court's previous orders, Plaintiffs are former satellite installation and service technicians classified as W-2 employees of one of DirecTV's Home Services Providers ("HSPs") - MasTec, Multiband, DirectSat, DirecTV Home Services, and DTV Home Services II, LLC (and its predecessor entities). Plaintiffs bring this action against DirecTV as their joint employer asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. §§ 290.500 et seq. Plaintiffs allege that the piece rate pay system used throughout DirecTV's provider network

---

[1] The Court held oral argument on December 17, 2015. Since that time the parties have worked together on a number of different issues in the case. The motions are now finally submitted for the Court's ruling.

fails to compensate them for work deemed nonproductive. On September 28, 2012, the Court conditionally certified Plaintiffs' FLSA claim to proceed as a collective action with four FLSA subclasses (Doc. Nos. 121, 134, 200).[2] In so doing, the Court found Plaintiffs' allegations sufficient to clear the relatively low hurdle of showing that potential class members were not paid for all hours worked as a result of DirecTV's piece rate pay policy (Doc. No. 121 at 7). Following discovery, and on the basis of a complete evidentiary record, DirecTV now moves to decertify the FLSA subclasses and Plaintiffs move to certify the state law claim for class action status under Rule 23.[3]

---

[2] Each FLSA subclass is defined as:

> Persons who (1) filed a consent to join this lawsuit; (2) are currently working or previously worked as an Installation or Service Technician for [MasTec, Multiband, DirectSat, or DirecTV Home Services] as a W-2 employee for any period of time within 3.5 years of the date of consenting to join the suit; (3) exclusively installed and/or serviced DirecTV equipment; (4) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; and (5) worked more than 40 hours in a week.

The limitations period was tolled for 180 days while DirecTV's motion to dismiss was under submission (see Doc. Nos. 46, 49), making the applicable period 3.5 years from the date each opt-in consented to join this action.

[3] The proposed state law class is defined as:

> Persons who are currently working or previously worked as an Installation or Service Technician within the State of Missouri for DTV Home Services II, LLC or its predecessors Up Communications Services, LLC and AeroSat USA, LLC as a W-2 employee for any period of time from March 2, 2008 to the present; (3) exclusively installed and/or serviced DIRECTV equipment; (4) were paid on a piece-rate basis, meaning they were paid specific amounts for certain tasks they completed; (5) worked more than 40 hours in a week; and (6) are not subject to a valid and enforceable agreement requiring these claims to be arbitrated.

**Discussion**

**I.     DirecTV's motions for decertification**

   **A. Standard**

A collective action under the FLSA to recover overtime compensation may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA does not define the term "similarly situated." Kautsch v. Premier Comm'ns, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007). Nevertheless, district courts in this circuit consistently apply a two-step process to make the determination. Kennedy v. Boulevard Bank, No. 4:12CV40 JCH, 2012 WL 3637766, at *2 (E.D. Mo. Aug. 22, 2012) (collecting cases). At the initial conditional certification stage, the Plaintiffs' burden is not rigorous; they must only show a "colorable basis for their claim" and "that a class of similarly situated plaintiffs exists." White v. 14051 Manchester Inc., 301 F.R.D. 368, 372 (E.D. Mo. 2014) (citation omitted). At the decertification stage, however, the standard is stricter, and three factors are analyzed based on information gained from discovery: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations. White, 301 F.R.D. at 372. Although this test appears to be less stringent than the standard to certify a class under Rule 23, given the analytical overlap, "it is not mere coincidence that courts facing parallel motions to decertify an FLSA collective action under Section 216(b) and to certify a class action under Rule 23 have tended to allow either both actions or neither to proceed on a collective basis." Davenport v. Charter Comm'ns, LLC, No. 4:12CV00007 AGF,

2017 WL 878029, at *8 (E.D. Mo. Mar. 6, 2017) (quoting <u>Ruiz v. Citibank, N.A.</u>, 93 F. Supp. 3d 279, 298-99 (S.D.N.Y. 2015)).

"Similarly situated" under a decertification analysis does not necessarily mean identical; "the question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." <u>Id</u>. "If the [class members] are similarly situated, the district court allows the representative action to proceed to trial. If not, the district court decertifies the class, dismisses without prejudice the opt-in plaintiffs, and allows the class representative to proceed to trial on her individual claims. The decision to certify or decertify a collective action under section 216(b) is within the district court's discretion." <u>White v. Baptist Mem'l Health Care Corp.</u>, No. 08-2478, 2011 WL 1883959, at *4 (W.D. Tenn. May 17, 2011), aff'd, 699 F.3d 869 (6th Cir. 2012) (citations and internal quotation marks omitted).

**B. Discussion**

DirecTV moves for decertification first because Plaintiffs cannot show a violation of the FLSA; rather, DirecTV claims Plaintiffs were paid for each hour worked and that their overtime pay was calculated in compliance with the FLSA and its regulations. Next, DirecTV asserts that Plaintiffs have failed to show they are similarly situated because the evidence relevant to their claims varies widely among the subclasses, and among the members within each subclass. DirecTV also states that credibility issues with the deposed opt-in Plaintiffs make trial by representative testimony improper. Finally, DirecTV contends there are individual defenses it may assert against each Plaintiff, and that fairness and procedural considerations weigh against maintaining a collective action in this case.

### 1.      Factual and employment settings of the individual plaintiffs

"Plaintiffs seeking to maintain an opt-in class action bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions." Kautsch v. Premier Comm'ns, No. 06-CV-04035–NKL, 2008 WL 294271, at *1 (W.D. Mo. Jan. 31, 2008). Here, Plaintiffs assert that the factual and employment settings within the subclasses are common with respect to the core questions that define this case - (1) whether DirecTV is an "employer" of the technicians under the FLSA, and (2) whether the technicians were paid for nonproductive work as required by the FLSA - and that both of these questions are susceptible of being answered with common proof (Doc. No. 383 at 20).

#### a.      Joint employer issue

A threshold question to DirecTV's liability, and the subject of cross-motions for summary judgment (Doc. Nos. 340, 344, 348, 361) which the Court has already ruled upon, is whether it "employs" the technicians as that term is defined by the FLSA.[4] The joint employer analysis is "inherently fact intensive" because it requires an assessment of the record in light of multiple factors, including: (i) the power to hire and fire employees; (ii) supervision and control of employee work schedules or conditions of employment; (iii) determination of the rate and method of payment; and (iv) maintenance of employment records. See Thornton v. Charter Commc'ns, LLC, No. 4:12CV479 SNLJ, 2014 WL 4794320, at *9 (E.D. Mo. Sept. 25, 2014). No one factor is dispositive; courts examine the "economic realities" of the working relationship, with the level of control the alleged employer has over significant aspects of the plaintiffs' employment central to the determination of employer status. See Saunders v. Ace

---

[4] The question of employment is not disputed as to the DirecTV Home Services subclass because DirecTV treats those technicians as W-2 employees.

Mortgage Funding, Inc., No. CIV. 05-1437DWFSRN, 2007 WL 4165294, at *4 (D. Minn. Nov. 16, 2007).

Plaintiffs argue that the parties' employment relationship can be proven on common evidence of company-wide policies and practices, summarized as follows:

- All technicians were required to perform their work in compliance with DirecTV's internal policies and procedures.

- All technicians were required to complete an installer certification program as well as other training by DirecTV before they could be hired.

- All technicians were required to undergo DirecTV training throughout their employment on both the technical aspects of their job but also on customer service and even their personal appearance.

- All technicians were required by DirecTV to wear uniforms and ID badges displaying the DirecTV logo.

- All technicians were monitored by DirecTV throughout the day via its Siebel computer system.

- DirecTV effectively controlled the work schedules of all technicians by assigning jobs through its own computer systems.

(Doc. No. 383 at 21) According to Plaintiffs, this evidence demonstrates that, as a matter of economic reality, DirecTV employed the technicians.

The briefing on the parties' cross-motions for summary judgment highlights the substantial factual disputes and contested inferences on the joint employer issue and demonstrates that an individualized inquiry into the employment circumstances of each Plaintiff is necessary to determine whether he or she was jointly employed by DirecTV and the respective HSPs. DirecTV does not deny that it sets requirements for technician training, certification, drug screening and criminal background checks, but argues this is done in the context of quality control, and not indicative of joint employment status. And while DirecTV exercises some supervision and control over technicians' work schedules and conditions of

6

employment through its Siebel system, the extent of that control is disputed. The evidence of record is further controverted as to DirecTV's influence on the technicians' rate of pay and access to HSP employment records. In its Memorandum and Order, incorporated by reference herein, the Court concluded that the material facts necessary to an analysis of the factors indicative of joint employment are genuinely disputed and thus preclude summary judgment in favor of either side. Because the joint employer analysis is "inherently fact intensive," the varying employment circumstances of the collective class members create individual defenses which make this issue unsuitable for collective treatment.

### b. Piece rate pay system

"Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791, 796 (8th Cir. 2014), aff'd, 136 S. Ct. 1036 (2016). Plaintiffs assert that across all subclasses, technicians were paid piece rate for installing and servicing DirecTV equipment. Rate cards showed the different tasks deemed productive and the amounts paid for "closing" work orders with those tasks. Plaintiffs claim that time spent on tasks not associated with a work order, such as traveling between jobs, attending weekly meetings, receiving and reviewing work schedules, calling customers, and organizing and maintaining work vehicles, was "non-productive" time that was not compensated in violation of the FLSA's requirement that a worker be paid for all hours worked. See 29 C.F.R. §§ 778.311, .318(a). Plaintiffs argue that because the piece rate pay system used throughout DirecTV's provider network was applied equally to all members of the subclasses, their challenge to the pay system satisfies the similarly situated requirement of Section 216(b) (Doc. No. 383 at 23).

In support of decertification, DirecTV first argues the subclasses must be decertified because Plaintiffs cannot show a policy that violates the FLSA. Plaintiffs' payroll records and deposition testimony demonstrate that DirecTV paid additional compensation for nonproductive time and also guaranteed minimum pay adjustments if the regular rate of pay, calculated by dividing weekly earnings by total reported hours, was insufficient to satisfy the minimum wage requirement. This argument was raised in DirecTV's motions for summary judgment on liability (Doc. Nos. 315, 322, 329, 336, 355), which the Court has already ruled upon. In its Memorandum and Order, incorporated by reference herein, the Court concluded that based on the conflicting evidence presented, DirecTV could not establish, as a matter of law, that Plaintiffs' regular rate of pay, and thus overtime premiums, were properly calculated in compliance with the FLSA.

Next, DirecTV argues that Plaintiffs' claim cannot be tried with representative proof because the pay practices regarding the allegedly uncompensated, nonproductive tasks were far from uniform across the subclasses, and in fact varied from technician to technician and from site to site. DirecTV offers evidence, in the form of opt-in Plaintiffs' deposition testimony and discovery questionnaires, that technicians were paid differently for tasks such as drive time, attending meetings and maintaining their vehicles. For instance, DirecTV Home Services Plaintiff Jonathan Spencer testified he was paid hourly for large amounts of drive time; on a single paycheck dated November 25, 2011, Spencer received 43.5 hours of hourly pay form drive time (Deposition of Jonathan Spencer ("Spencer Depo."), Doc. No. 320-7 at 125:1-14; 166:24-167:2, 239:4-6; 242:21-243:12). Plaintiff Vincent Torrie stated that when his time between jobs exceeded 45 minutes, his supervisor awarded him a flat amount of "Other Essential Pay" (Deposition of Vincent Torrie ("Torrie Depo."), Doc. No. 320-14 at 99:21-

101:15). Still another Plaintiff testified he never drove between jobs because he only performed one installation a day (Deposition of Christopher Ragland ("Ragland Depo."), Doc. No. 328-23 at 137:5-17).

All Plaintiffs deposed admitted they were paid hourly for some meeting time, although the practices varied by site as to how much meeting time they were paid for. For instance, DirectSat Plaintiff Robert Guice testified that at his site, technicians were allowed to claim one to two hours as meeting time, in addition to the time spent cleaning out their vehicles and loading supplies for the week (Deposition of Robert J. Guice, Jr. ("Guice Depo."), Doc. No. 328-1 at 118:14-23). Plaintiff Michael Logeman testified that most meeting time was recorded and paid hourly; however, if a meeting ran long, the time recorded would occasionally be converted from hourly meeting to production time (Deposition of Michael Logeman ("Logeman Depo."), Doc. No. 328-6 at 107:6-109:14; 209:5-210:13). As for time spent on vehicle maintenance, DirectSat Plaintiff Michael Erickson testified he was paid hourly for approximately 60 minutes per month for vehicle maintenance (Deposition of Michael Erickson ("Erickson Depo."), Doc. No. 328-17 at 151:4-19; 235:9-15), whereas other Plaintiffs did not recall being paid specifically for vehicle maintenance - on an hourly basis or otherwise (see, e.g., Deposition of Alan Jacobson ("Jacobson Depo."), Doc. No. 328-5 at 134:14-17); Deposition of Gene John ("John Depo."), Doc. No. 328-20 at 85:10-17, 112:24-113:7).

Some Plaintiffs testified to instances where a supervisor could award them additional pay. DirecTV Home Services opt-ins were eligible for "Other Essential Pay" ("OEP") for tasks not listed on a work order at the discretion of their supervisor or other management personnel at their location. OEP is listed on compensation statements as a separate line item, but the statements do not indicate for what OEP was paid. Thus, DirecTV argues, a statement by

statement, technician by technician, site by site inquiry would be necessary to determine whether a technician was already paid via OEP for so-called non-productive tasks for which they are seeking compensation in this action.

Plaintiffs' testimony was equally varied regarding the reporting of alleged nonproductive time, with some technicians recording their nonproductive time on their timesheets while others did not, or did so inconsistently. (Doc. No. 320 at 11-15; Doc. No. 327 at 14-16; Doc. No. 334 at 13-14; Doc. No. 353 at 11-13) One Plaintiff admitted that whether he recorded all of his hours worked depended on which site he was working out of (Deposition of Lonnie Spicer ("Spicer Depo."), Doc. No. 354-2 at 105:7-106:14). Named Plaintiff Parr testified that his supervisors would stop assigning him work when he came close to 40 hours for the week. As a result, he would intentionally not punch in on his handheld device "in order to get more work" (Deposition of Steven Parr ("Parr Depo."), Doc. No. 354-1 at 60:22-61:17; 153:20-154:18).

Some Plaintiffs were able to record time in the "Other" category on their timesheets. At some sites, technicians could only use the "Other" category for vehicle maintenance (see, e.g., Deposition of Patrick Gorman ("Gorman Depo."), Doc. No. 332-8 at 121:14-18; Deposition of Anthony Davis ("Davis Depo."), Doc. No. 332-5 at 146:19-147:4), while at other sites, technicians used the "Other" category for time spent getting supplies from the warehouse, calling customers, assembling satellite dishes at home before his route, and assisting other techs (Deposition of Aaron Hunt ("Hunt Depo."), Doc. No. 332-9 at 126:13-21; 128:3-25; 183:22-185:6). Named Plaintiff Guice testified he was not allowed to use the "Other" category unless it was approved by the GM, who would instruct the technicians on whether to use the "meeting" category or the "other" category to record time for certain tasks (Guice Depo. at 117:10-118:5).

Some Plaintiffs admitted they lacked knowledge about the pay practices regarding non-productive time at the other DirecTV locations where subclass members worked.

The record further demonstrates that Plaintiffs had varying levels of understanding of the piece rate pay system. Some technicians were trained on the pay system; others were not. Some technicians signed timesheet certifications stating they understood that the piece rate pay included compensation for all hours worked. Some technicians acknowledged they never looked at their paystubs or asked anyone about their pay; others reviewed their weekly performance and compensation statements to verify their pay was correct. A number of MasTech Plaintiffs signed a Working Time Policy as well as other documents acknowledging MasTec's pay and timekeeping policies. Over half of the Multiband Plaintiffs were subject to collective bargaining agreements that required a technician to notify his supervisor once he hit 35 hours for the week, at which point the supervisor could choose not to assign him more work orders. DirecTV argues this evidence demonstrates that whether technicians understood what was included in their piece rate pay is an individualized inquiry that cannot be tried with representative proof.

In sum, DirecTV asserts that Plaintiffs' claims cannot form the basis of a collective action because the pay practices articulated by the Plaintiffs are too varied across the subclasses. Each Plaintiff's proof of violation will be individualized because it depends on how or if they reported their alleged nonproductive time, and how or if they were paid for the alleged nonproductive tasks. These variations in Plaintiffs' testimony demonstrate that one Plaintiff's testimony at trial would not be representative of the class.

In support of their argument for decertification, DirecTV cites Espenscheid v. DirectSat USA, LLC, 705 F.3d 770 (7th Cir. 2013), a hybrid Rule 23 and FLSA collective action case. Plaintiffs were cable installers who alleged that their employer compelled them to do work for

which they were not compensated and to work more than 40 hours a week without being paid overtime. The district court initially denied the defendant's motion for FLSA decertification, concluding that - despite differences among the employees' deposition testimony - their "primary challenge was to defendants' uniform policies and practices" and that the differences could be managed by subclassing. As the case approached trial, however, the court became concerned with the plaintiffs' trial plan, which proposed presenting testimony at trial from 42 "representative" class members to determine liability for the entire class (2,341 technicians) without regard to the subclasses identified by the court. Therefore, on its own motion, the court decertified the subclasses on the eve of trial. Thereafter, the plaintiffs settled and the suit was dismissed. The settlement reserved the plaintiffs' right to appeal the decertification, and they appealed. Id. at 772.

On appeal, the Seventh Circuit analyzed whether it was feasible to try the claims collectively from a practical perspective, and generally concluded that the proposed "representative" evidence in the plaintiffs' trial plan would not provide a reasonable basis for determining whether each employee had been underpaid and by how much. The Espenscheid court distinguished the varied work circumstances of the technicians from a situation where every class member worked the exact same number of hours but was not paid overtime, in which case "damages could be computed effortlessly, mechanically, from the number of days he worked each week and his hourly wage. And when 'it appear[s] that the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice …, the district court can award that relief without terminating the class action and leaving the class members to their own devices.'" Id. at 773 (internal quotation omitted). The Seventh Circuit disagreed that the varying circumstances of the proposed class

members could be smoothed over by extrapolations from the testimony of 42 "representative" members of the class, stating that

> [E]ven if the 42, though not a random sample, turned out by pure happenstance to be representative in the sense that the number of hours they worked per week on average when they should have been paid (or paid more) but were not was equal to the average number of hours of the entire class, this would not enable the damages of any members of the class other than the 42 to be calculated. To extrapolate from the experience of the 42 to that of the 2341 would require that all 2341 have done roughly the same amount of work, including the same amount of overtime work, and had been paid the same wage.

Id. at 774. Thus, the Court affirmed decertification of the subclasses. See also Farmer v. DirectSat USA, LLC, No. 08CV3962, 2013 WL 2457956, at *7 (N.D. Ill. June 6, 2013) (decertifying an FLSA collective action in light of Espenscheid).

In their opposition to decertification, Plaintiffs contend that DirecTV's liability can be established with common evidence that all technicians were subject to the same pay policies that, as amended from time to time, described the piece-rate pay system at issue. All technicians used the same time sheets that referenced pay codes which had uniform meanings for different types of work. Each day, all technicians were required to plan their routes based on their assigned schedules and inventory their work vehicle to confirm they had all of the necessary equipment and materials to complete the assigned work orders. All technicians were required to call their morning appointments by 8:30 a.m. and their afternoon appointments by 12:30 p.m. Plaintiffs assert that throughout the class period, technicians were not paid for calling customers or cleaning, organizing, and maintaining their work vehicles. (Plaintiffs do, however, acknowledge differences between the subclasses regarding payment for meetings and driving between jobs.) (Doc. No. 383 at 24-29)

With regard to damages, Plaintiffs offer a report by their proffered expert, statistician L. Scott Baggett, Ph.D. (Doc. No. 385-3), which describes a methodology for calculating damages. Plaintiffs have also submitted a trial plan (Doc. No. 457) for the Court's consideration.[5] According to their trial plan, Plaintiffs will present the jury with Dr. Baggett's summary of how those class members who responded to their discovery questionnaire answered basic questions on whether they were paid for the principal tasks at issue in this lawsuit (Doc. No. 457 at 50). The questionnaire asked each class member whether they were paid for traveling between jobs, attending weekly meetings, receiving and reviewing schedules, calling customers, or organizing and maintaining their work vehicles. Plaintiffs could answer that: (a) they were paid hourly for those tasks; (b) those tasks were part of their piece rate pay; (c) they did not know whether they were paid for those tasks; or (d) they were not paid for them at all. (Id.) Based on the questionnaire data, Plaintiffs plan to ask the jury to arrive at a reasonable estimate of unpaid time. (Id. at 55) Plaintiffs assert that through their expert witness Dr. Baggett, they will then essentially recalculate their regular rate of pay for each week during the relevant period by backing out the estimated time spent on those "non-productive" tasks they contend was not paid under the piece rate system.[6]

Plaintiffs concede that individual damages will vary, but argue the technicians within each subclass suffered sufficiently similar damages to allow a jury to use representative evidence to establish a reasonable estimate of unpaid time. Plaintiffs rely on the Supreme Court's recent opinion in Tyson Foods, 136 S. Ct. 1036, which holds that representative or

---

[5] The Court has also considered DirecTV's opposition to Plaintiffs' trial plan. (Doc. No. 460)

[6] DirecTV seeks to preclude Dr. Baggett's proposed testimony and report under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) (Doc. No. 313).

statistical samples can be used to establish or defend against liability in FLSA cases. In Tyson Foods, the Court found the plaintiffs' overtime pay should be calculated to include the time spent putting on and taking off ("donning and doffing") protective gear. Id. at 1042. Because Tyson failed to record the time each employee spent donning and doffing the protective gear, the plaintiffs provided their own evidence regarding donning and doffing time. Id. at 1042-43. The plaintiffs' evidence (which the Supreme Court refers to as "representative evidence") included employee testimony, video recordings of donning and doffing, and a report performed by an industrial relations expert (estimating donning and doffing time at 18 to 21-25 minutes per day). Id. In light of the evidentiary gap created by Tyson's failure to keep records, the Court permitted plaintiffs to use the representative evidence. Id. at 1047. The Court noted several factors supporting the relevance of the representative evidence, including that Tyson had not kept records of individual employees' "donning and doffing" time, and that class members were similarly situated, working at the same factory, performing the same work, and being paid under the same policy. Id. at 1047-48.

Under these circumstances, the experiences of a subset of employees can indeed be probative as to the experiences of all of them. In this case, however, the evidence of record demonstrates that Plaintiffs would not be able to testify about a single, uniform policy given each Plaintiff's varied experiences. As in Espenscheid, because Plaintiffs were paid on a piece-rate basis, the variance between the hours worked by each technician each week prevents them from extrapolating from the experiences of a few to the experiences of all. "The use of representative testimony is justified only where it is reasonable to believe that the testifying witnesses' experiences are sufficiently similar to those of the rest of the non-testifying plaintiffs." Roussell v. Brinker Int'l, Inc., CIV.A. H-05-3733, 2008 WL 2714079, *22 (S.D.

Tex. July 9, 2008). Where a purported unlawful policy impacts Plaintiffs in different and individual ways, "there is not one single decision, policy, or plan but rather multiple policies that require decertification. <u>White</u>, 301 F.R.D. at *374. Accordingly, the Court finds the disparate factual and employment setting of the Plaintiffs, and particularly the variances in the piece rate pay systems that affected the Plaintiffs, weighs in favor of decertification.

Plaintiffs note that decertification has been denied in four other DirecTV-technician cases where the technicians' factual and employment settings were found to be sufficiently similar with respect to the challenged policies to warrant class treatment, citing <u>Kautsch v. Premier Comm'ns</u>, No. 06-CV-04035-NKL, 2008 WL 294271 (W.D. Jan. 31, 2008), <u>Thompson v. Bruister & Assocs.</u>, 967 F. Supp. 2d 1204 (M.D. Tenn. 2013), <u>Butler v. DirectSat USA, LLC</u>, 47 F. Supp. 3d 300 (D. Md. 2014), <u>Jacks v. DirectSat USA, LLC</u>, No. 10-CV-1707, 2015 WL 1087897 (N.D. Ill. Mar. 10, 2015) (certifying a class for resolution of particular liability issues). (Doc. No. 383 at 55-61)

The cases upon which Plaintiffs rely are largely distinguishable. In <u>Kautsch</u>, the court noted that Premier's evidence weighing in favor of decertification went mostly to damages, and that the court could create damages subclasses if plaintiffs established liability at trial. 2008 WL 294271, *4. The majority of issues DirecTV has raised here, however, relate to liability. Likewise in <u>Butler</u>, the court found the differences among the technicians were not significant or, alternatively, went more towards damages than liability. 47 F. Supp. 3d at 312. And because <u>Butler</u> involved only 26 plaintiffs, the court stated it could go through each Plaintiff's damages individually if need be. <u>Id</u>. at 312-13. Here, there are four nationwide subclasses of technicians, four different W-2 employers, and approximately 800 class members. <u>Bruister</u> is distinguishable in that the policies and procedures governing the technicians' work did not vary among the

defendants' locations, and the time-keeping, payroll, and human resources policies and procedures were all set by defendants' management and applied uniformly to all technicians regardless of work location. 967 F. Supp. 2d at 1220. Jacks involved the decertification of a Rule 23 class. Because there is no procedural mechanism under the FLSA to certify a class only as to particular issues, Jacks is inapplicable to the decertification issues presented in this case.

### 2. Individual defenses

"The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." Butler v. DirectSAT USA, LLC, 47 F. Supp. 3d 300, 313 (D. Md. 2014) (quoting Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007)).

DirecTV asserts it has numerous defenses to the claims of individual Plaintiffs which it is entitled to litigate, including the applicability of the 7(i) exemption, the Employee Commuting Flexibility Act, 29 U.S.C. § 254(a), the Portal-to-Portal Act, 29 U.S.C. § 254, the doctrine of unclean hands for false reporting of time, the doctrine of judicial estoppel as to claims that accrued prior to filing for bankruptcy but were not disclosed, the failure of certain Plaintiffs to fit within the class definition, and the statute of limitations. (Doc. No. 320 at 23-31; Doc. No. 327 at 28-37; Doc. No. 334 at 24-31; Doc. No. 353 at 26-35) In addition, DirecTV contends that a number of DirecTV Home Services Plaintiffs received a settlement in a prior wage and hour lawsuit against DirecTV, Cicero v. DirecTV, No. 07-1182 (C.D. Cal.), which operates as a release of part of their claims herein (Doc. No. 320 at 27-28), and that as many as 20 DirecTV Home Services Plaintiffs who worked in California and Colorado received more overtime than is required under federal, entitling DirecTV to a set-off for those payments (id. at

28-29).[7] Lastly, DirecTV asserts that the claims of 64 Multiband subclass members subject to various collective bargaining agreements are subject to dismissal under the Labor Management Relations Act (Doc. No. 353 at 27-28).

The Court has already ruled on DirecTV's motions for summary judgment, finding that the applicability of the 7(i) exemption and the Employee Commuting Flexibility Act, as well as the statute of limitations issue (and willfulness), are not common questions that can be determined as a matter of law based on representative testimony. Defenses raised as to individual Plaintiffs, i.e., unclean hands, judicial estoppel, and the failure of certain Plaintiffs to fit within the class definition, further highlight the distinctions between the Plaintiffs' claims and, therefore, favor decertification. See Lugo v. Farmer's Pride Inc., 737 F. Supp. 2d 291, 300-01 (E.D. Penn. 2010) ("Because individualized defenses prevent an efficient proceeding with a representative class, several courts have granted motions for decertification on this basis."); Martin v. Citizens Financial Group, Inc., 2013 WL 1234081 at *8 (E.D. Pa.) (plaintiffs' disparate factual and employment settings and individualized defenses require that the collective action be decertified).

### 3. Fairness and procedural considerations

Finally, under the fairness and procedural considerations factor, the Court must "determine whether it can coherently manage the class in a manner that will not prejudice any party." Rawls, 244 F.R.D. at 302 (D. Md. 2007) (internal quotation omitted). "The court should consider the primary objectives of allowance of a collective action under § 216(b), namely (1)

---

[7] Plaintiffs do not disagree that DirecTV are entitled to a credit for daily overtime premiums for certain employees who worked in California and Colorado and assert that this issue should be able to be resolved outside the presence of the jury, along with DirecTV's claims that certain technicians do not meet the class definition because they were not paid piece rate or did not record over 40 hours of work in a week during the recovery period. (Doc. No. 383 at 49-50 n. 94)

to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." White, 301 F.R.D. at 377 (quoting Moss v. Crawford & Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000)). Plaintiffs broadly state that fairness and procedural considerations favor collective treatment in this case (Doc. No. 383 at 52), whereas DirecTV contends that trying this case on a collective basis will lead to jury confusion and violate its due process rights (Doc. No. 334 at 33-34). Further, DirecTV notes that Plaintiffs' counsel is currently pursuing FLSA claims against DirecTV on behalf of 474 technicians in separate individual cases across the country. See In re DirecTV Wage & Hour Litigation, MDL Case No. 2594 (ECF No. 38 at 25). (Doc. No. 320 at 34; Doc. No. 327 at 38; Doc. No. 334 at 33; Doc. No. 353 at 37)

Plaintiffs expended a tremendous amount of effort on a detailed trial plan in an effort to show that this case could be manageably tried on representative evidence. In their plan, Plaintiffs submit a sample verdict director comprised of six questions the jury would have to answer regarding the claims of each of the five sub-classes (four FLSA subclasses and one Rule 23 state law class). (Doc. No. 457 at 10) Although the jury may return different answers to the same question for each subclass, it will be constrained to provide just one answer for all class members in the same subclass. The evidence for the jury consists of a set of proposed stipulations (id. at 14), four witnesses whose testimony ostensibly relates to all sub-classes, and three witnesses for each of the subclasses, Mastec, Multiband, DirectSat, AeroSat, and DirecTV Home Services, with only two subclass members testifying for each subclass (id. at 15-24). Plaintiffs' trial plan also includes examples of the documentary evidence they intend to introduce (id. at 25-49), and identifies their expert, Dr. Baggett, who will summarize the class

members' discovery questionnaire responses regarding their allegedly unpaid work (id. at 50-54)

DirecTV opposes the plan, arguing that it fails to account for the variances in Plaintiffs' testimony and other evidence discussed herein that demonstrates the individualized nature of the material issues in this case. (Doc. No. 460 at 1-2) Furthermore, the trial plan does not address how the Court and the parties should handle the individualized evidence necessary to DirecTV's statutory defenses to each subclass member's claims. (Id. at 2) DirecTV also argues that by allowing Plaintiff's purported expert to substitute a summary of the discovery questionnaire responses for the testimony of the class members themselves, it will be deprived of its right to cross-examine Plaintiffs on fundamental aspects of their claims. (Id. at 4)

The Court has considered Plaintiffs' trial plan, and finds that proceeding collectively on the individualized claims of hundreds of technicians would most certainly result in jury confusion as well as prejudice to DirecTV. Based on the evidence presented, Plaintiffs' claims are dependent upon factors such as site location, work state, supervisor, individual technicians' practice with respect to recording productive and nonproductive time, and whether they had written agreements regarding their pay. While some evidence will likely overlap between Plaintiffs, "each Plaintiff's claim is, at its core, an individualized one that will be dominated by individualized proof," requiring a jury to sort out all of that evidence – Plaintiff by Plaintiff - to make specific, fact-intensive findings. Acfalle v. DirecTV, Inc., No. 2:13CV08108-SVW-E, Doc. No. 101 at 2-3 (C.D. Cal. Aug. 14, 2015).

The Court recognizes that the FLSA is a remedial statute and that the purposes of Section 216 weigh heavily in favor of allowing cases to proceed collectively. Roussell v. Brinker International, Inc., No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Texas July 9,

2008). Given the significant differences in Plaintiffs' factual and employment settings, however, the Court believes that fairness and procedural considerations ultimately favor decertification. White, 301 F.R.D. at 378. The disparate facts concerning whether there was an agreement or understanding as to what was covered by piece rate pay, whether and how often each Plaintiff performed "nonproductive" tasks, whether they recorded that time, and how they were instructed to record that time, together with DirecTV's individualized defenses, make it impracticable to try the claims of the named Plaintiffs and the opt-in Plaintiffs in a collective action.

### C. Conclusion

For these reasons, the Court will decertify the FLSA collective action and the four subclasses. The named Plaintiffs' claims remain pending.

### II. Plaintiffs' motion for Rule 23 certification

### A.      Standard

Rule 23(a) establishes four prerequisite conditions to maintain a class action commonly referred to as (1) numerosity, which means the class must be "so numerous that joinder of all members is impracticable," (2) commonality, which requires that "there are questions of law or fact common to the class," (3) typicality, which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) adequacy, which ensures that "the representative parties will fairly and adequately protect the interests of the class." White, 301 F.R.D. at 379-80; Fed. R. Civ. P. 23(a); see also Paxton v. Union Nat'l Bank, 688 F.2d 552, 559 (8th Cir. 1982). A class action plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." Davenport v. Charter Communications, LLC, 302 F.R.D. 520, 528 (E.D. Mo. 2014) (quoting Comcast Corp. v.

<u>Behrend</u>, 133 S. Ct. 1426, 1432 (2013)). The provision at issue here is Rule 23(b)(3), which requires a court to find that "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs have the burden of showing the Rule 23 requirements are met and that the class should be certified. <u>Luiken v. Domino's Pizza, LLC</u>, 705 F.3d 370, 372 (8th Cir. 2013); <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994). The Court has an affirmative duty to consider the merits of an action "to the extent that they overlap with class certification issues." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 981 (9th Cir. 2011) ("a district court must consider the merits if they overlap with the Rule 23(a) requirements") (citing <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551-52 (2011); <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 509 (9th Cir. 1992)).

**B.    Discussion**

DirecTV opposes certification on the grounds that Plaintiffs cannot satisfy the commonality, typicality and predominance requirements of Rule 23,[8] and fail to meet the other requirements of Rule 23. In addition, DirecTV argues that class certification cannot be granted on the issue of joint employment because without a showing of liability, this issue is moot, and because the joint employment factors are not susceptible to common proof. Because the analysis of the commonality and typicality requirements of Rule 23(a) tend to merge, <u>see</u> <u>Ruiz</u>, 93 F.

---

[8] DirecTV does not directly address the numerosity requirement, except to assert that the small number of plaintiffs (186 technicians) could pursue individual claims against Defendants (<u>see</u> Doc. No. 247 at 44), and the adequacy of the proposed class counsel is not at issue.

Supp. 3d at 288 (citations omitted), the Court will focus on the commonality requirements of Rule 23(a)(2) and the predominance and superiority requirements of Rule 23(b)(3).

### 1. Rule 23(a)(2) commonality and Rule 23(b)(3) predominance

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is typically not difficult for class action plaintiffs to meet. White, 301 F.R.D. at 380; see also Rikard v. U.S. Auto Prot., L.L.C., 287 F.R.D. 486, 489-90 (E.D. Mo. 2012) ("The commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied.") (quoting Mund v. EMCC, Inc., 259 F.R.D. 180, 183 (D. Minn. 2009)). As the Supreme Court has explained, "any competently crafted class complaint literally raises common questions," but "[w]hat matters to class certification is not the raising of common questions - even in droves - but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." Dukes, 131 S. Ct. at 2551 (emphasis in original) (citations omitted). In other words, Plaintiffs' claim must "depend upon a common contention … of such a nature that … determination of its truth or falsity will resolve an issue that is central to the validity of each one of the [individual plaintiff's] claims in one stroke." Id. Even a single common question that meets this standard satisfies Rule 23(a)(2), and where Plaintiffs identify at least one common question, differences between class members' claims are less relevant. Dukes, 131 S. Ct. at 2556 ("We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate*, but in order to determine (as Rule 23(a)(2) requires) whether there *is* even a single common question.") (emphasis in original).

The Rule 23(b)(3) predominance inquiry is "far more demanding than the requirement of commonality." Luiken, 705 F.3d at 377 (citation omitted). Rule 23(b)(3) "permits

certification only if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1430 (2013). "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." <u>Halvorson v. Auto-Owners Ins. Co.</u>, 718 F.3d 773, 778 (8th Cir. 2013) (citing <u>Avritt v. Reliastar Life Ins. Co.</u>, 615 F.3d 1023, 1029 (8th Cir. 2010)).

Plaintiffs contend that common issues predominate because all members of the proposed class were subject to DirecTV's piece-rate pay system (Doc. No. 241 at 19-23), and because damages can be determined on a classwide basis (<u>id</u>. at 23-27). Technicians were paid for completing a variety of installation-related tasks listed on a rate card. (<u>See</u> Doc. No. 242-3; Rule 30(b)(6) Deposition of Rebecca Sellers (R. Sellers Depo.), Doc. No. 242-4 at 141:9-17; Deposition of Valerie Kirby (V. Kirby Depo.), Doc. No. 242-1 at 155:6-21) Their pay was not determined by the number of completed installations, but rather by the number of completed tasks. In addition, the Aero Sat employee handbook states that technicians' pay "consist[s] of some type of productivity, quality or piecework component." (R. Sellers Depo. at 88:15-89:6; 247-10) DirecTV's witnesses testified that class member technicians were paid piece-rate. (R. Sellers Depo. at 95:18-96:19; Rule 30(b)(6) Deposition of John Sellers (J. Sellers Depo.) Doc. No. 242-7 at 76:9-21)

DirecTV argues the predominance requirement has not been met because there are no common answers to whether DirecTV is liable as a joint employer (Doc. No. 247 at 39-43); whether Plaintiffs and the proposed class were properly compensated under the piece-rate system (<u>id</u>. at 28-30); whether there was an agreement or understanding about non-productive

time (id. at 31-35); and because damages cannot be determined on a classwide basis (id. at 35-39)

The Court finds Plaintiffs have not shown predominance based upon their "common evidence" of a piece-rate pay policy. "Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding." White, 301 F.R.D. at 382 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24 (1997)). As discussed in detail above, the evidence before the Court indicates there are a number of factual and legal questions particular to each proposed class member, including whether each member worked more than 40 hours per week, worked time that was not recorded, and was not paid for that time. Thus, an individualized analysis, technician-by-technician, and week-by-week, must be performed to determine whether they were compensated for all hours worked under the piece-rate system in effect. Likewise, whether each technician had an agreement or understanding that their pay per work order was intended to compensate them for so-called nonproductive time is an individual question. See Benton v. Labels Direct, Inc., No. 4:14CV01293-ERW, 2014 WL 4659640, *6 (E.D. Mo. Sept. 17, 2014) (holding that predominance requirement was not satisfied where "class adjudication would involve separate mini-trials to determine a variety of factual and legal questions particular to each member," including whether each member worked more than 40 total hours weekly during the relevant period, worked time that was not recorded in the timekeeping system, and was not paid for such time). Such questions speak to both predominance and superiority. Ruiz, 93 F. Supp. 3d at 295.

Moreover, Plaintiffs' proposed damages analysis cannot be performed on a classwide basis. As the Seventh Circuit recognized in Espenscheid, because the technicians varied in the amount they worked, the amount of overtime they worked, and the efficiency with which they

worked, even if Plaintiffs could establish an "average" number of overtime hours through representative proof, some technicians would receive a windfall while others would be undercompensated. See Espenscheid, 705 F.3d at 774. Further, Plaintiffs here have insufficient records to establish their individualized unreported work time. Plaintiffs Arnold and Feger have testified they have no records supporting the number of hours they worked, did not record, and were not compensated for. Consequently, as in Espenscheid, to calculate damages here, the hours Plaintiffs worked would need to be reconstructed from "memory, inferred from the particulars of the jobs the technicians did, or estimated in other ways" which were unique to the individual technician. Farmer, 2010 WL 3927640, at *7. Thus, individual testimony regarding damages will be necessary, making decertification appropriate.

### 2. Rule 23(b)(3) superiority

The second inquiry under Rule 23(b)(3) calls for a court to determine whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Relevant factors to be considered in making this determination include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

For the reasons discussed above, and particularly with regard to the last factor, a class action would not be the superior method for resolving the claims of the state law class for unpaid overtime. Without common proof of practices resulting in work without pay, the litigation would devolve into a series of mini-trials involving each class member's individual

circumstances, which contravenes the efficiency goals of class certification. See Doyel v. McDonald's Corp., No. 4:08CV1198 CAS, 2010 WL 3199685, *9 (E.D. Mo. Aug. 12, 2010) (finding no superiority where case "would devolve into a series of mini-trials for each class member and each instance of alleged time shaving or off-the-clock work.").

## C.    Conclusion

To the extent there are common questions of law or fact regarding DirecTV's piece rate pay policy, those questions are outweighed by the differences among the members of the proposed state law class. As discussed in detail above, Plaintiffs' claims are dependent on a number of necessarily individualized inquiries that confirms the impracticability of proceeding as a class. Accordingly, Plaintiffs' motion for Rule 23 certification will be denied.[9] In addition, because the opt-in Plaintiffs are not similarly situated, DirecTV's motions to decertify the FLSA subclasses will be granted. The named Plaintiffs' claims will remain pending before this Court, but the Court will dismiss the Opt-in Plaintiffs' claims without prejudice. To avoid prejudice to those Opt-in Plaintiffs who wish to file individual lawsuits, the Court will toll the applicable statute of limitations for 120 days after entry of this Memorandum and Order. See Davenport, 2017 WL 878029, at *11.

Accordingly,

---

[9] Plaintiffs argue in the alternative for certification of a limited issues class under Rule 23(c)(4). (Doc. No. 241 at 28) There is a conflict in authority on whether such a class may properly be certified under Rule 23. In re St. Jude Med., Inc., 522 F.3d 836, 841 (8th Cir. 2008) (citations omitted). Even courts that have approved "issue certification" have declined to certify such classes where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation. Id.; see also McLaughlin v. American Tobacco Co., 522 F.3d 215, 234 (2d Cir. 2008) (issue certification would not "materially advance the litigation because it would not dispose of larger issues such as reliance, injury, and damages"); In re Baycol Prods. Litig., 218 F.R.D. 197, 209 (D. Minn. 2003) (concluding that issue certification under Rule 23(c)(4) was not appropriate, because "individual trials will still be required to determine issues of causation, damages, and applicable defenses."). Given the individual issues discussed above, the Court finds this is such a case.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Rule 23 Certification of Missouri State Law Claim [241] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motions for Decertification as to the DirecTV Home Services Subclass [319], DirectSat Subclass [326], Mastec Subclass [333] and Multiband Subclass [352] are **GRANTED.** The claims of all opt-in Plaintiffs are **DISMISSED** without prejudice, leaving before the Court the named Plaintiffs who originated this action. Plaintiffs' counsel shall notify the opt-in Plaintiffs that the collective action has been decertified and their FLSA claims are no longer pending before this Court and file a notice with the Court confirming that they have done so.[10]

**IT IS FURTHER ORDERED** that the applicable statute of limitations for the FLSA claims of the Plaintiffs who have opted into the collective action is tolled for period of 120 days from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that within 30 days of the date of this Memorandum and Order, the remaining parties shall file a joint proposed schedule for the remainder of the litigation, including a proposed trial date.

Dated this 31st day of March, 2017.

_John A. Ross_

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

---

[10] This Order does not revive the claims of those opt-in Plaintiffs who have previously been dismissed with prejudice for failure to comply with discovery orders in this case (see Doc. Nos. 214, 471).